UNITED STATES of America, Appellee,

v.

Allen Harper WISE, a/k/a Skip Wise, Appellant.

UNITED STATES of America, Appellee,

v.

Lorman Eugene EDMONDS, a/k/a Moe, Appellant.

Nos. 78–5050, 78–5121.

United States Court of Appeals, Fourth Circuit.

Argued May 10, 1979.

Decided July 25, 1979.

---

Sheldon E. Friedman, P. A., Andrew Jay Graham, Baltimore, Md. (Kramon & Graham, P. A., Baltimore, Md., on brief), for appellants.

Catherine C. Blake, Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Robert B. Schulman, Asst. U. S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, BUTZNER and PHILLIPS, Circuit Judges.

WINTER, Circuit Judge:

In these consolidated cases, Allen Harper Wise appeals from a conviction for distributing, and possessing with intent to distribute, heroin, while Lorman Eugene Edmonds, who pleaded guilty to the same offense and testified at Wise's trial, appeals from his subsequent conviction for giving false testimony at Wise's trial. Wise urges reversal of his conviction on the ground that Edmonds' fifth amendment privilege against self-incrimination was violated when he was compelled to testify at Wise's trial. Wise further contends that the evidence adduced at his trial was insufficient to support his conviction. Edmonds attacks his perjury conviction on the ground that the judge who sentenced him on the drug charge, to which he had pleaded guilty, took into account his untruthfulness at Wise's trial and that the imposition of further punishment upon a conviction for perjury violated the fifth amendment guarantee against double jeopardy. We reject all of these contentions and affirm in both cases.

I.

A single indictment charged Wise and Edmonds with violating § 401(a)(1) of the Controlled Substances Act, 21 U.S.C. § 841(a)(1), by distributing, and possessing with intent to distribute, approximately twelve grams of heroin. Edmonds subsequently entered into a plea agreement with the government, in which Edmonds agreed to plead guilty to the indictment and "to cooperate fully and completely with the government and to testify candidly and truthfully, if necessary, for the government." In return, the government agreed, inter alia, to make no recommendation to the district court regarding an appropriate sentence and to inform the court of the degree of Edmonds' cooperation.

Edmonds was rearraigned and entered a plea of guilty. The prosecutor then stated that if the case went to trial, the government would establish that on May 17, 1977, Special Agent McKinney and an informant of the Drug Enforcement Administration spoke with Edmonds about the purchase of

a quantity of heroin; that Edmonds stated that Wise had the heroin and that McKinney and the informant should return later in the day; that McKinney and the informant returned later in the day and spoke with Edmonds and Wise about purchasing the heroin; that Edmonds and Wise then went into an apartment building and returned with a small waxpaper bag; that McKinney informed Edmonds that he wanted more heroin and handed to Edmonds $150; that Edmonds went back into the building and handed Wise the $150, which Wise counted; and that a moment later, Edmonds returned to McKinney and gave him a waxpaper bag whose contents were later determined to be approximately twelve grams of heroin.

After the prosecutor had related these incidents, Edmonds' attorney stated: "Your Honor, we—that is, the defendant and I—have no corrections or amendments or additions to the statement of facts." The district judge then addressed Edmonds personally, and in response to the judge's questions, Edmonds, who had been placed under oath, stated that the government's version of the facts was correct. After engaging in further colloquy with Edmonds to be sure that the plea was entered intelligently and voluntarily, the district judge accepted the guilty plea and deferred sentencing.

At Wise's trial, the government called Edmonds as a witness. At a hearing outside the presence of the jury, however, Edmonds invoked his privilege against self-incrimination and refused to testify. The district judge ruled that Edmonds had waived his fifth amendment privilege and directed him to answer the prosecutor's questions. In the presence of the jury, the district judge permitted the prosecutor to treat Edmonds as an adverse witness. In response to the prosecutor's questions, Edmonds admitted that he had sold heroin to McKinney, but he denied any participation by Wise in the transaction. He testified that he had never told McKinney that Wise had the heroin to be sold and that he had

not delivered to Wise the $150 paid by McKinney. The prosecutor was then permitted to impeach Edmonds by use of the statement of facts adopted by Edmonds at his rearraignment. This statement of facts was also admitted as substantive evidence against Wise. After hearing other evidence from both sides, the jury found Wise guilty, and judgment was entered accordingly.

Edmonds was subsequently called for sentencing on the drug charge, to which he had pleaded guilty. Edmonds reaffirmed the accuracy of the statement of facts recited by the prosecutor at the time the guilty plea had been entered. He stated that he had understood the plea agreement to require him to testify only against himself, not against Wise, and that he had changed his story at Wise's trial because he feared that testifying against Wise would have led to reprisals from Wise's associates. In his statement preceding formal pronouncement of sentence, the district judge commented upon the data in Edmonds' presentence report, including his unfavorable history of drug use and his record of prior convictions. He then added:

Now, even more disturbing here is that you told one story to agents, and even to the Probation Officer, concerning the co-defendant Wise's involvement. Then you changed your story when you took the stand and testified under oath at Wise's trial and you now give the original story and say that you were worried about the consequences.

It is obvious to me that you have very little regard for the truth, even when sworn as a witness at a federal trial.

.     .     .     .     .

Let me say this to you: If you had cooperated and followed through with your agreement, I would have given you a very much lower sentence than I am about to give you.

The district judge then sentenced Edmonds to ten years' imprisonment plus a special parole term of five years.[1]

---

1. Edmonds' appeal from this judgment has been voluntarily dismissed and thus is not be-

fore us. *United States v. Edmonds*, No. 78–5051 (4 Cir. July 25, 1978).

Subsequently, Edmonds was indicted under 18 U.S.C. § 1623 for giving false statements under oath at Wise's trial.[2] Edmonds admitted that he had committed perjury at Wise's trial, but he claimed that he had already been punished for the perjury by the sentence imposed on the drug charge. Edmonds moved that the perjury indictment be dismissed, arguing that prosecution for perjury would subject him to double jeopardy. A different district judge denied the motion, and upon Edmonds' waiver of trial by jury, found him guilty and sentenced him to one year's imprisonment, to be served consecutively with the sentence imposed on the drug charge.

## II.

■ Wise's assignments of error need not detain us long. Wise contends that Edmonds was compelled to testify in violation of the fifth amendment privilege against self-incrimination, and that this constitutional violation requires reversal of his conviction. The district court ruled that Edmonds had waived his fifth amendment privilege by entering into the plea agreement requiring him to cooperate with the government and by testifying to his participation in the heroin sale when he entered his guilty plea. We agree. Even if there were doubt whether Edmonds' waiver was knowing and voluntary, we hold that Wise has no standing to assert the violation of Edmonds' fifth amendment privilege. *See, e. g., United States v. Skolek*, 474 F.2d 582, 584–85 (10 Cir. 1973).[3]

■ We also find no merit in Wise's contention that the evidence was insufficient to support the conviction. In addition to the statement of facts adopted by Edmonds when he entered his guilty plea, which was admitted as substantive evidence against Wise,[4] the government's witnesses presented evidence that Wise had negotiated with McKinney for the sale of the heroin and that Edmonds had given to Wise the $150 paid by McKinney for the heroin. Although evidence was introduced to support Wise's alibi defense, the evidence on appeal must be viewed in a light most favorable to the government. *See, e. g., United States v. Sherman*, 421 F.2d 198 (4 Cir.), *cert. denied*, 398 U.S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970). The record contains ample evidence from which the jury could have found beyond a reasonable doubt that Wise participated, at least by aiding and abetting, *see* 18 U.S.C. § 2, in the illegal sale of heroin.

## III.

■ Edmonds contends that the sentence imposed on him on the drug charge included punishment for giving false testimony and that his subsequent conviction and sentence for perjury therefore constitute a second punishment for that offense. He invokes the well-settled principle that the double jeopardy clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). We, however, find no violation of the double jeopardy clause in this context. Although we agree that Edmonds' drug sentence took into account his perjury at Wise's trial,[5] we do not agree that the

---

2. Although the general offense of perjury is defined in 18 U.S.C. § 1621, Congress created in § 1623 a new offense of making false declarations in certain judicial proceedings in order to ease the evidentiary standards for perjury. *See generally Dunn v. United States*, —— U.S. ——, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979). Because the differences between §§ 1621 and 1623 are immaterial to the instant appeal, we will sometimes refer to the § 1623 offense as perjury.

3. The standing question might be different if Edmonds' testimony had been obtained by such coercion as to make it unreliable and thus to deny Wise a fair trial. Nothing of the sort happened in this case.

4. Wise has not challenged the admission of Edmonds' statement as substantive evidence, except on the basis of the fifth amendment argument that we reject. In any event, the statement would appear to be admissible as an exclusion from the hearsay rule under F.R.Ev. 801(d)(1)(A).

5. Although the double jeopardy issue might be avoided altogether by treating the remarks of the district judge in imposing the drug sentence

drug sentence constituted punishment for perjury, at least for purposes of double jeopardy analysis.

The complex process of fixing an appropriate sentence was recently discussed by the Supreme Court in *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). *Grayson* upheld from due process attack a district judge's consideration of false testimony given by the defendant at his own trial in setting the defendant's sentence.[6] The Court rejected the defendant's contention that the sentence "constitutes punishment for the crime of perjury for which he has not been indicted, tried, or convicted by due process." *Id.* at 52, 98 S.Ct. at 2617. *Grayson* differs from the instant case, since in that case the defendant's false testimony was given at his own trial rather than that of a codefendant, and no double jeopardy issue was raised before the Court. Nevertheless, we find the Court's discussion of the sentencing function in *Grayson* to be helpful in resolving the instant case.

As Chief Justice Burger noted in his opinion for the Court, sentencing in the early days of the Republic followed automatically from conviction. "[T]he period of incarceration was generally prescribed with specificity by the legislature. Each crime had its defined punishment." *Id.* at 45, 98 S.Ct. at 2613. The sentencing function began to change dramatically at the close of the nineteenth century, as reformists asserted the primary purpose of incarceration to be rehabilitation. Under new statutes setting wide ranges of possible sentences for a given offense and requiring the preparation of pre-sentencing reports on defendants, sentencing judges became obligated to consider

not simply the nature and severity of the offense, but the individual character of the defendant and his prospects for rehabilitation. *See id.* at 45–48, 98 S.Ct. 2610.

The opinion in *Grayson* continued by pointing out that the Supreme Court gave its strong approval to the new broad discretion invested in sentencing judges in the leading case of *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). There, the Court permitted a sentencing judge to consider information available on the defendant's background, even if the defendant is not given an opportunity to rebut such information. To restrict the sentencing judge's consideration to only those facts adduced in open court would, according to *Williams*, conflict with the conscientious judge's need for "information concerning every aspect of a defendant's life." *Id.* at 250, 69 S.Ct. at 1084. These considerations in *Williams* led the *Grayson* court to permit a sentencing judge to consider the defendant's giving of false testimony before him. This broad discretion invested in the sentencing judge was considered necessary to implement the "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime." *Id.* at 247, 69 S.Ct. at 1083, *quoted in United States v. Grayson*, 438 U.S. at 45, 98 S.Ct. 2610.

█ Of course, the principle that "punishment should fit the offender" has not been carried to its logical extreme. Our criminal law does not permit a person to be punished merely because he is wicked or in need of rehabilitation. The commission of a defined offense against society, proved beyond a reasonable doubt, is still the fundamental prerequisite for the imposition of

as referring simply to Edmonds' failure to comply with his plea agreement, rather than to his committing perjury at Wise's trial, we are not inclined to give those remarks such a strained reading. The government has conceded, and we agree, that the district judge took into account Edmonds' giving of false testimony in setting his drug sentence.

**6.** We had reached the same conclusion in *United States v. Moore*, 484 F.2d 1284 (4 Cir. 1973). We concluded our opinion by stating:

We caution, however, that sentencing judges should not indiscriminately treat as a perjurer every convicted defendant who has testified in his own defense. . . . It is better in the usual case for the trial judge who suspects perjury to request an investigation. Then, if the facts warrant it, the United States Attorney may institute prosecution for this separate and distinct crime.

*Id.* at 1287–88. We find nothing in *Grayson* inconsistent with this admonition.

any criminal punishment, whatever its purposes. Thus, even under the rehabilitative theories of penology, imprisonment must be regarded as punishment for the crime of which the defendant is formally accused and convicted. Conversely, we believe that when a sentencing judge takes into account various aspects of the defendant's background, including other offenses committed, in order to assess the defendant's need for rehabilitation, the sentence thereby imposed does not constitute punishment for these aspects of defendant's background.

In the instant case, Edmonds was sentenced to ten years' imprisonment, plus a special parole term of five years, upon conviction on the drug charge. In determining the appropriate length of the sentence, the district judge considered many factors, including Edmonds' history of drug use, his record of prior convictions, his lack of truthfulness at Wise's trial, his decision to plead guilty, his status as a mere "lieutenant" in the heroin sale, and the fact that the sale was an isolated incident and not part of a major operation. Clearly, the sentence constituted punishment for unlawfully possessing and distributing heroin. But we also think that the sentence did not constitute punishment for testifying falsely at Wise's trial, any more than it was punishment for Edmonds' history of drug use or for his criminal record. Under the principles of sentencing expounded in *Williams* and *Grayson*, all of these factors are to be considered by the judge in determining the defendant's need for rehabilitative treatment and the prospects for the success of that treatment, in order to fix the appropriate length of imprisonment. As the Supreme Court stated in *Grayson*, "the defendant's readiness to lie under oath . . . may be deemed probative of his prospects for rehabilitation." 438 U.S. at 52, 98 S.Ct. at 2617.[7]

We recognize that in the eyes of a defendant who has been told by a sentencing judge that his sentence has been set more harshly than it might have been because of his perjury, a ruling that the sentence does not punish him for his perjury might seem to be based more on semantics than on practical reality. But we believe that for purposes of double jeopardy analysis, the conclusion is ineluctable. In various contexts, defendants have been given harsher prison terms because of past criminal conduct, already punished, without implicating double jeopardy concerns.

The practice of considering prior criminal convictions of a defendant as warranting a harsher sentence is so well established that its permissibility, despite the possible contention that the defendant is being punished a second time for his prior convictions, has never seriously been questioned. *See, e. g., United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Williams v. Oklahoma*, 358 U.S. 576, 583–84, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *United States v. Hendrix*, 505 F.2d 1233, 1235 (2 Cir. 1974), *cert. denied*, 423 U.S. 897, 96 S.Ct. 199, 46 L.Ed.2d 130 (1975); F.R.Crim.P. 32(c)(2). The permissibility under the double jeopardy clause of imposing a harsher sentence on a defendant on account of his prior criminal convictions has been directly addressed by the Supreme Court in the context of recidivism statutes which mandate harsher penalties for repeat offenders. In *McDonald v. Massachusetts*, 180 U.S. 311, 45 L.Ed. 542 (1901), the Court upheld a habitual offender statute from a double jeopardy challenge. The Court stated:

> The fundamental mistake of the [defendant] is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished. . . .

---

7. Edmonds does not contend, nor would the record support a contention, that the district judge, in setting the drug sentence, engaged in "the impermissible sentencing practice of incarcerating for the purpose of saving the Government the burden of bringing a separate and subsequent perjury prosecution," *United States v. Grayson*, 438 U.S. at 53, 98 S.Ct. at 2617. We express no view on the double jeopardy implications of this improper sentencing practice.

But it does no such thing. . . . The punishment is for the new crime only, but is the heavier if he is an habitual criminal.

*Id.* at 312. This holding was reaffirmed by the Court in *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948), where Justice Jackson stated for the Court: "The sentence as a . . . habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."

Further support for our conclusion is found in *Williams v. Oklahoma,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). Williams, who kidnapped a person and later killed him, was convicted for murder and sentenced to life imprisonment. He was subsequently charged with and convicted for kidnapping arising out of the same incident. The trial judge imposed the death sentence for kidnapping and stated that the fact that Williams had killed his kidnapping victim was an aggravating factor that warranted the harsh sentence. The Supreme Court rejected Williams' contention that the sentencing judge, by considering the murder for which he had already been sentenced, had punished him a second time for the same offense.

> [I]n view of the obvious fact that, under the law of Oklahoma, kidnapping is a separate crime, entirely distinct from the crime of murder, the court's consideration of the murder as a circumstance involved in the kidnapping crime cannot be said to have resulted in punishing [Williams] a second time for the same offense . . .

*Id.* at 586, 79 S.Ct. at 427.

If Edmonds' drug case had been called for sentencing after his conviction for perjury, there is no doubt that the district judge setting the drug sentence could properly consider the perjury conviction and could impose a harsher drug sentence on that account without punishing Edmonds a second time for perjury, within the meaning of the double jeopardy clause. We see no reason to set aside the harsher sentence merely because the drug sentence, which took account of Edmonds' perjury, was imposed *before* rather than *after* the perjury conviction. We conclude that, in either case, the drug sentence does not constitute "punishment," in the double jeopardy sense, for lack of truthfulness.

*AFFIRMED.*