**UNITED STATES of America,**
**Appellant,**

v.

**GARCIA, Felipe Manual Torres a/k/a Felipe Manuel, Felipe Garcia, Felipe Torres, Carlos Carballo, Luis M. Torres.**

**No. 90–1190.**

United States Court of Appeals,
Third Circuit.

Argued Aug. 21, 1990.

Decided Nov. 28, 1990.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Frank R. Costello, Jr. (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellant.

William A. DeStefano, Christopher D. Warren (argued), Conrad, O'Brien, Gellman, DeStefano & Rohn, Philadelphia, Pa., for appellee.

Before STAPLETON, COWEN, and WEIS, Circuit Judges.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

In this appeal, the government seeks to overturn the district court's dismissal of two counts of a criminal indictment. The government contends that the district court erred in holding that consideration of the

offenses here in question at a prior sentencing created a double jeopardy bar to this prosecution. The defendant counters that "the Federal Sentencing Guidelines have brought about a fundamental change in the manner in which a court is required to treat related offense conduct at sentencing[,]" Brief for Appellee at 15, and that as a result the district court was correct in dismissing the two counts.

Upon a close examination of the record in this case, we find that the offenses with which defendant is charged in this case were considered at sentencing in the same manner as other misconduct traditionally has been considered at sentencing and that such consideration does not create a double jeopardy bar to further prosecution for the same offenses. We also find it highly unlikely that they were used for any other purpose, and we do not reach defendant's argument concerning any "fundamental" change that may be effected by the Guidelines. We will reverse the district court's dismissals of the challenged counts.

## I.

Defendant, Luis M. Torres, was arrested three times in 1988—on June 26, July 19, and August 19,—for dealing cocaine at the same North Philadelphia street corner. He was also arrested in connection with other alleged drug transactions on three occasions in 1987. At the time of each arrest, defendant gave authorities a different name and address. Following the first four of these arrests, Torres failed to appear for trial.

In September 1988, Torres was charged in two separate indictments with conspiring to distribute, distributing, and distributing within 1,000 feet of a school, based on the July and August 1988 arrests. In December 1988, he pleaded guilty to all counts of both indictments. Throughout this period, Torres denied having any previous arrest or criminal record. However, shortly before his sentencing in May 1989, the government discovered the June and the 1987 arrests and brought both the arrests and Torres' misrepresentations to the attention of Judge DuBois. Judge DuBois sentenced Torres to 27 months of incarceration on each count of each indictment and provided that each sentence would run concurrently with all others.

Several months after that sentencing, in September 1989, Torres was indicted with forty other defendants for various cocaine-related offenses. He was charged with conspiracy to distribute cocaine (Count One), distribution (Count Thirty–Six), distribution within 1000 feet of a school (Count Thirty–Seven), and possession with intent to distribute (Count Thirty–Eight). The distribution and possession counts were based on the alleged June drug transaction. The conspiracy count was based in part on that transaction. Torres challenged all four counts in which he was named, claiming that the previous prosecution created a double jeopardy bar. The government made a motion to dismiss the conspiracy count—which the court granted—but continued to press the other three counts.

Over the government's objection, Judge Pollak dismissed the distribution (Count Thirty–Six) and the possession with intent to distribute counts (Count Thirty–Eight).[1] Judge Pollak acknowledged that he was uncertain how Judge DuBois had taken the June arrest into consideration. However, he ruled that Torres, by showing that Judge DuBois had taken it into account in some manner, had tendered a *prima facie* case in support of his argument that prosecution on Counts Thirty–Six and Thirty–Eight would violate the double jeopardy clause. Since the government had not met its burden of rebutting that *prima facie* case, dismissal of those counts was required. The government filed this timely appeal.

At the hearing before Judge Pollak on the double jeopardy motion, Torres attempted to meet his burden of showing a

---

**1.** Judge Pollak refused to dismiss the count charging distribution near a school (Count Thirty–Seven) because he found there was insufficient evidence that Judge Dubois, in sentencing, had considered that specific offense. Defendant's brief asks us to review that ruling, *See* Appellee's Brief at p. 18, n. 4, but that issue is not properly before us.

*prima facie* case by tendering the presentence reports and the sentencing memoranda filed with Judge DuBois, as well as an audiotape of the ensuing sentencing hearing. Counsel for Torres explained to Judge Pollak that he had secured a copy of the tape rather than a transcript "in the interest of time and expense." 133a. Both sides made uncontradicted representations to Judge Pollak about what occurred at the sentencing hearing before Judge DuBois. Perhaps as a result of the absence of disagreement and the assurance of counsel for Torres that the position there taken by the parties "echoed" the positions taken in the sentencing memoranda, Judge Pollak did not listen to the tape before ruling on the motion. While the tape was present in the courtroom and tendered by Torres, it was not marked into evidence.

Both the presentence report concerning the July offense and the presentencing report concerning the August offense were filed after the presentence officer had learned of the June and the 1987 arrests. These reports (1) do not use a quantity of drugs from the June transaction in calculating the "base offense level," (2) deny Torres a reduction of his offense level by two levels for "acceptance of responsibility" and add two levels for "obstruction of justice" as a result of his failure to disclose the June and the 1987 arrests, and (3) thereafter report the facts concerning the June and the 1987 arrests under the heading "Other Criminal Conduct." Under the heading "Sentencing Options," each presentence report sets forth a guideline maximum based on the previously calculated adjusted offense level. Neither report states the number of grams involved in the alleged June transaction.

The government's original sentencing memorandum was filed before the June and the 1987 arrests came to light. It noted that the amount of cocaine involved in the July and August transaction totaled 18.4 grams. The government took the position, however, that this quantity did "not accurately reflect the scope of the defendant's criminal conduct." Appendix at 72a. Citing the commentary to § 2D1.4 of the Sentencing Guidelines,[2] it urged that the sentencing judge "should consider evidence that the defendant engaged in a pattern of drug sales before, during, and between transactions charged" in the indictments and should "approximate" the amount involved before calculating the basic offense level. The government's memorandum then recounted the information obtained in the government's investigation of the organization which allegedly controlled drug sales at the intersection where Torres was arrested, emphasizing that the sales totaled a "minimum of one pound of cocaine per week." The government's memorandum reported no figure for the quantity of drugs involved in Torres' alleged June transaction.

After the June and the 1987 arrests surfaced, the government filed a supplemental sentencing memorandum. This memorandum noted the recommendation contained in the presentence reports concerning the adjusted offense level, expressed contentment with that recommendation, and withdrew any argument that Torres should be sentenced above the range determined on the basis of the 18.4 grams involved in the July and August transactions.

During the hearing before Judge Pollak, counsel for Torres represented without

**2.** Application Notes 1 and 2 to § 2D1.4 provide in part:

1. If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale.... If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.

2. Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

contradiction that Judge DuBois had denied a motion filed by Torres asking that the court completely disregard the June and the 1987 arrests in deciding upon the appropriate sentences. According to defense counsel, the court stated that the information concerning these arrests was "material" to the sentencing process. The government represented without contradiction that Judge DuBois had declined to consider quantities other than the 18.4 grams in determining the base offense level. Neither side contended before Judge Pollak that Judge DuBois had made a finding with respect to a specific quantity of drugs in excess of the 18.4 grams of cocaine involved in the July and August transactions.

Thus, we know that Judge DuBois considered the information concerning the June 1988 arrest, as well as that concerning the 1987 arrests, to be material to the decision he was called upon to make. There are at least four different ways, however, in which information concerning the June arrest could have been "material" to the original sentencing: (1) material to the calculation of the base offense level under Chapter 2 of the Guidelines, (2) material to a determination regarding the suggested adjustments to that level under Chapter 3, (3) material to a decision whether to depart above the guideline range under section 4A1.3, and (4) material to a determination of where to sentence within the guideline range.

The parties agree that there was no departure in the original sentencing. The government maintains that Judge DuBois utilized the information concerning the June arrest for the second of these purposes and perhaps the fourth, but not the first. Torres argues that Judge DuBois used this information for the first of these purposes as well, and it is this use that provides the basis for his primary, "funda-

mental change" argument. As Torres puts it:

> Under prior practice, a court imposing sentence had *discretion* as to whether the uncharged conduct would be given effect at sentencing, whereas under the Guidelines the court is *required* to adjust the guideline range upwards on the basis of uncharged or unadjudicated related offense conduct.
>
> *   *   *   *   *   *
>
> Thus, under the Guidelines the sentencing court is obligated to aggregate the quantity of narcotics involved in the offense of conviction with quantities involved in uncharged or unadjudicated but related offense conduct. If, however, the unadjudicated conduct is related to the offense of conviction and utilized for the purpose of increasing the defendant's Guideline sentence, we submit that the defendant has been punished for that related offense conduct and cannot again be exposed to the threat of punishment for the very same conduct.

Appellee's Brief at 15–17.

We find it at least highly unlikely that Judge DuBois used the June 1988 arrest information in calculating the base offense level. First, we note that the sentence imposed is consistent with his having accepted the approach in the presentence report of calculating the base offense level using 18.4 grams, denying a two-level reduction for acceptance of responsibility, and assessing a two-level rise for obstruction of justice.[3]

Second, by the time Judge DuBois was faced with the decision to determine the sentence, the government had acceded to the approach taken in the presentence report and had abandoned its argument that the base offense level should take more than 18.4 grams into account. While Judge DuBois was not, of course, bound by the government's concession, it would be high-

---

**3.** Because Torres was convicted of distributing within 1,000 feet of a school, Guidelines § 2D1.3 specifies that the quantity of drugs for which he was convicted be doubled for sentencing purposes. Thus, the 18.4 grams of cocaine are treated as 36.8 grams, resulting in a base offense level of 14. *See* § 2D1.1 (setting out base of-

fense levels for specific quantities of drugs). Torres also received a two-level increase for obstruction of justice, making his adjusted offense level a 16. Because Torres had a criminal history category of I, an offense level of 16 yields a sentencing range of 21–27 months. Chapter 5, Part A.

ly unusual for a judge to ignore such a concession and impose a more weighty sentence without comment. Given the fact that defense counsel possessed a tape of the sentencing hearing and brought other rulings of the sentencing judge to Judge Pollak's attention, we find it highly significant that this record is devoid of any evidence of such a comment and that defense counsel failed to challenge government's representation that Judge DuBois had declined to take other quantities of drugs into account.

Most important, even if Judge DuBois had been disposed to use more than the quantity of drugs from the July and August transactions in calculating the base offense level, the information before him was such that he could not have appropriately done so without making factual findings that concededly don't exist. This was not a situation in which the sentencing judge had the option of simply accepting an additional quantity of grams that was being advanced with record support by the government. The information presented to Judge DuBois contained no specific gram count for the alleged June transaction and even under the government's abandoned theory concerning the non-adjudicated offenses, there were substantial issues presented as to which offenses were a part of a single pattern, which offenses of the alleged conspirators Torres could be held accountable for, and what the approximate quantity in the relevant transactions had been. Moreover, had the court accepted the government's theory of a pattern over at least three months and a quantity of at least one pound per week, the resulting guideline range would have been far too high to bracket 27 months.

In sum, the record confronts us with a situation in which the alleged crimes at issue in this case were considered by the original sentencing judge for the purpose of the suggested Chapter 3 adjustments and probably in the course of deciding to sentence at the high end of the guideline range; it is virtually certain that they were *not* considered in calculating the base offense level.

## II.

■ This court has appellate jurisdiction, pursuant to 18 U.S.C. § 3731, over the government's appeal of the dismissal of counts of an indictment. Because Judge Pollak's decision to dismiss the counts was one of law, it is subject to plenary review.

■ The double jeopardy clause of the Fifth Amendment protects not only against multiple prosecutions for the same offense, but also "against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Thus, in order to find Counts Thirty–Six and Thirty–Eight valid, it is not sufficient to note the conceded fact that defendant has not previously been indicted for the offenses charged in those counts. We also must conclude that defendant has not previously been "punished" for those offenses.

### A.

We express no opinion as to whether the double jeopardy clause would bar prosecution of Counts Thirty–Six and Thirty–Eight if it appeared likely that the alleged June transaction had played a role in the determination of the base offense level. For reasons explained hereafter, even if we assume *arguendo* that such use would create a double jeopardy problem in a subsequent prosecution based on that transaction, Torres is not entitled to relief.

### B.

■ Although information concerning the June arrest played a role in Judge DuBois' decision to deny Torres a reduction in his base offense level for acceptance of responsibility and to assess him an increase for obstruction of justice, that increase did not constitute "punishment for the June transaction." Torres received a heavier sentence than he would have had there been no June arrest only because he concealed that arrest during the proceedings on the July and August offenses. It was that concealment that played a role in the Chapter 3 adjustments, not the arrest or

any transaction underlying the arrest. As a result, no double jeopardy concerns were implicated by this use of information concerning the June arrest.

## C.

Judge DuBois may also have been influenced by information concerning the June offense in choosing to sentence defendant at the top of the guideline range. If so, Judge DuBois was simply taking into account all the information available to him that was relevant to the seriousness of the July and August offenses. If the July and August offenses were a part of a pattern of drug dealing, they were clearly more serious than if they were isolated occurrences. To sentence Torres more heavily because of the seriousness of the July and August transactions is not to punish him for any transaction that may have occurred in June.

Precedent on sentencing and double jeopardy supports this conclusion. The consideration at sentencing of prior convictions has long been held not to violate double jeopardy.[4] Conversely, consideration of a prior bad act at sentencing will not ordinarily create a double jeopardy bar to a later prosecution for that bad act. In both cases, the other bad acts are used by the sentencing judge merely to evaluate the character of the defendant and the character of the crime for which he was convicted. *Williams v. Oklahoma,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959) (kidnapping sentence could take into consideration death of victim, where defendant had already been sentenced for murder); *Sekou v. Blackburn,* 796 F.2d 108 (5th Cir.1986) (although armed robbery sentencing had included victim's death as aggravating factor, later prosecution for felony-murder not barred); *United States v. Wise,* 603 F.2d 1101 (4th Cir.1979) (consideration at sentencing of defendant's false testimony during trial does not bar later prosecution for perjury); *United States v. Troxell,* 887 F.2d 830 (7th Cir.1989) (same result re:

later prosecution for bail jumping); *see also United States v. Haygood,* 502 F.2d 166 (7th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 791, 42 L.Ed.2d 812 (1975).

The same rationale has been used to uphold repeat offender statutes. "The sentence as a ... habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948) (citations omitted) (upholding habitual offender statute).

## III.

Judge Pollak held that Counts Thirty-six and Thirty-eight had to be dismissed because Torres had tendered a *prima facie* case and the government had failed to demonstrate that he had not received punishment for the June transaction when he was sentenced on the July and August transactions. We conclude that Judge Pollak erred in so holding.

As Judge Pollak correctly pointed out, this court has indicated on a number of occasions that a defendant has the burden of "putting his double jeopardy claim in issue" and that the burden of persuasion shifts to the government once a defendant has met his burden. As we said in *United States v. Liotard,* 817 F.2d 1074, 1077 (3d Cir.1987):

> [A] defendant moving to dismiss an indictment on double jeopardy grounds has the burden of going forward with the evidence by putting his double jeopardy claim in issue. If the defendant makes a non-frivolous showing of double jeopardy, he is entitled to a pre-trial evidentiary hearing to determine the merits of his claim. Once the defendant has made out his prima facie case, the burden of persuasion shifts to the government to prove by a preponderance of the evidence that [the indictments or punishments are not for the same offense].

4. At least one court of appeals has found that the use of criminal history categories to factor prior convictions into sentences does not violate

double jeopardy. *United States v. Thomas,* 895 F.2d 1198 (8th Cir.1990).

*See also United States v. Inmon,* 594 F.2d 352, 353 (3d Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 121, 62 L.Ed.2d 79 (1979); *Cf. Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 2094 n. 14, 109 L.Ed.2d 548 (1990) (noting that all nine courts of appeals that have faced this question have adopted this same framework).

In *Liotard,* we spoke in the context of a case in which the issue was whether the crime charged in a prior case and the crime charged in the case before the court were "in law and in fact the same offense" so that the first prosecution and the double jeopardy clause barred the second prosecution. 817 F.2d at 1077. Here, of course, there is no dispute that the crime charged in the first prosecution is distinct from that charged in the second, and the issue is whether the defendant received punishment in the first prosecution for the conduct underlying the second. Nevertheless, we believe the defendant's burden is the same; before the government is required to shoulder any burden, the defendant must give the district court some substantial reason to believe that he received punishment in the first prosecution for the conduct underlying the second.

▮ In determining whether a defendant has met this burden, we must view the evidence tendered by the defendant as a whole and also keep in mind that many uses at sentencing of information about unadjudicated criminal conduct hold no potential for implicating double jeopardy values. Viewing the issue from that perspective, we believe that the defendant's burden is not met where, as here, the defendant's evidence demonstrates only that the court imposing the original sentence may have used such information for some purpose, but the obvious purposes for which it could have been used do not involve the imposition of punishment for the unadjudicated conduct. If we were to hold that the defendant in such a case has presented a *prima facie* case of a double jeopardy violation, such a *prima facie* case would exist

in all situations where the presentence report in the first prosecution makes any reference to the unadjudicated criminal conduct. We believe considerable mischief would result if in every such case, the government had the burden of ruling out any possibility of a use that implicates double jeopardy values.

In this case, although Torres showed that information concerning the alleged June transaction was considered for some purpose or purposes by the sentencing judge, he simply gave the district court no substantial reason to believe that that information was used in a way which creates a double jeopardy problem in a subsequent prosecution based on that transaction. Use of information concerning the alleged June transaction for the purpose of the suggested adjustments to the base offense level under Chapter 3 and for the purpose of determining where in the guideline range to sentence does not create a double jeopardy problem. Use of the quantity of drugs in the alleged June transaction to calculate the base offense level for the July and August transactions poses a distinct issue, but one that is unnecessary to decide in this case. Even if we assume that the use of such information to increase the minimum guideline sentence on the July and August offenses would create a double jeopardy problem with respect to a prosecution on the alleged June transaction, the tendered evidence taken as a whole not only fails to provide a substantial basis for believing that such use occurred, it demonstrates that such use was highly unlikely. Accordingly, we conclude that Torres failed to present a *prima facie* case and that the judgment of the district court must be reversed.

### IV.

#### Conclusion

For the foregoing reasons [5], the judgment of the district court with respect to Counts Thirty-six and Thirty-eight will be reversed and those counts will be remand-

---

5. We have also considered and found to be without merit Torres' claim that he is entitled to relief on the alternative ground that Counts

Thirty–Six and Thirty–Eight are the product of prosecutorial vindictiveness.

ed to the district court for further proceedings consistent with this opinion.