UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert FARMIGONI,
Defendant–Appellant.

No. 90–1494.

United States Court of Appeals,
Fifth Circuit.

June 7, 1991.

---

Frank G. DeSalvo, New Orleans, La., for defendant-appellant.

Victoria May, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before BROWN, KING, and GARWOOD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Robert Farmigoni challenges on double jeopardy grounds his second conviction and sentence by his guilty plea arising out of a series of fraudulent banking transactions. Farmigoni was first convicted in the federal District Court for the Eastern District of Louisiana after entering a plea of nolo contendere to bank fraud in violation of 18 U.S.C. §§ 2, 215 and 1344. His second conviction on a guilty plea to violation of 18 U.S.C. §§ 2 and 1344, in the District Court for the Southern District of Mississippi, is now before us on appeal. Finding that the charges arose from two separate and distinct violations of the bank fraud statutes, we affirm the conviction and sentence imposed by the Mississippi district court.

*The Double Cross*

Farmigoni served as a senior vice president and loan officer of First Financial Savings and Loan Association in Lutcher, Louisiana (First Financial), from March 1985 until his resignation on June 6, 1986. Throughout his tenure with First Financial, Farmigoni was involved with Loretta Lustig, a customer of the bank, in a scheme to defraud the institution by issuing unauthorized letters of credit in favor of various of Lustig's concerns. Lustig used the documents to obtain funds from other financial institutions and paid Farmigoni for his key complicity.

Shortly before his resignation from First Financial, Farmigoni signed a fraudulent letter of credit for the benefit of Double Development, Inc. (Double Development), a business owned by Lustig. The letter of credit ostensibly committed First Financial to pay Trustmark National Bank of Jackson, Mississippi (Trustmark), up to $550,000 in the event that Lustig's company defaulted on a loan. Farmigoni was not authorized to issue the letter, and First Financial had no knowledge of his actions.

A few days after the letter of credit was prepared, Lustig presented it with a loan application to Trustmark. Trustmark, relying on this bogus letter, loaned Double Development $500,000.

On April 19, 1988, Farmigoni was charged in the Eastern District of Louisiana with bank fraud and aiding and abetting for these and related activities. The grand jury by indictment and subsequent supplemental indictment (the Louisiana indictment) charged him on eleven counts, including one count that Farmigoni defrauded First Financial in violation of 18 U.S.C. § 1344.[1] Farmigoni entered a plea

---

1. This provision states:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud a financial institution; or
(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000, or imprisoned not more than 30 years, or both. 18 U.S.C. § 1344.

Count 9 of the Louisiana indictment charged Farmigoni with providing Lustig with letter of credit number 1821 for the benefit of Double Development in violation of 18 U.S.C. §§ 2 and 1344. As a preface to the specific counts, the indictment described a scheme to defraud, in which this false letter of credit played only one part. This part of the indictment generally

of nolo contendere, and the district court convicted and sentenced him on these charges in February 1990.

In April 1989, while the Louisiana case was pending, Farmigoni was indicted in the Southern District of Mississippi for defrauding Trustmark in violation of the same bank fraud statute.[2] He pleaded guilty to this charge after the trial court rejected his motion to dismiss on double jeopardy grounds. Farmigoni was subsequently convicted and sentenced to three and one-half years. The court's sentence specified that he was to serve this time consecutive to the sentence imposed in the Louisiana case.

Farmigoni claims that the Mississippi district court erred (1) in refusing to dismiss the Mississippi indictment, and (2) in ordering him to serve consecutive, rather than concurrent, sentences. Since both of these contentions rest on purely legal grounds, we employ a *de novo* standard of review.

### Seeing Double

■ Farmigoni argues that the Fifth Amendment prohibition against subjecting a person to double jeopardy bars the government from prosecuting and convicting him under his plea of guilty to the Mississippi indictment.[3] He asserts that the offenses in the Louisiana and Mississippi cases are the same because both indictments arise out of the same scheme charging him with using letter of credit number 1821 to commit bank fraud for the benefit of Double Development.

The Supreme Court declared in *Blockburger v. United States* that the Double Jeopardy Clause prohibits successive prosecutions for the same criminal act or transaction under two criminal statutes unless "each provision requires proof of an additional fact which the other does not." 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Grady v. Corbin*, 495 U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), without a doubt markedly extended the *Blockburger* doctrine to bar subsequent prosecutions "in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Id.* at ——, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. *Grady* distinguished between the elements of the offense and the evidence used to prove the commission of an offense, observing that "[t]he critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct.... [T]he presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding." *Id.* (citation omitted).

Initially we point out that both *Blockburger* and *Grady* involved different offenses from different statutes arising out of the same acts or occurrence. In contrast, in the instant case the government contends that Farmigoni violated the same statute on two separate occasions, in two different ways, involving two different victims—two separate offenses.

We accept the government's position that the subsequent prosecution was valid. Farmigoni's contention that double jeopardy attaches because both indictments arose out of the same scheme ignores the fact that a single transaction, especially if, as here, of an extended sort, can produce numerous infractions. *See Gore v. United States*, 357 U.S. 386, 389, 78 S.Ct. 1280,

charged Farmigoni and Lustig with "unlawfully, willfully and knowingly execut[ing] a scheme and artifice to defraud First Financial and to obtain moneys, funds, credits, assets, securities and other property owned by or under the control of First Financial by means of false and fraudulent pretenses, representations and promises."

**2.** Count 2 of the Mississippi indictment charged Lustig and Farmigoni as co-defendants with applying for a loan at Trustmark on behalf of Double Development (with the fraudulent letter of credit which Farmigoni issued), in violation of 18 U.S.C. §§ 2 and 1344.

**3.** In light of our decision on the merits, we do not address the matter, not even alluded to in the briefs of either party, whether the plea of guilty waived the double jeopardy claim. *See Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *United States v. Broce*, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

1283, 2 L.Ed.2d 1405, 1408 (1958). The Mississippi indictment required proof that the fraudulent letter of credit was presented to Trustmark as collateral for the $500,-000 loan request. The Louisiana indictment, however, required the government to show only that the fraudulent letter of credit was issued but not authorized, for the purpose of defrauding some financial institution, and that Farmigoni's participation in its issuance constituted a scheme to defraud First Financial. The charge did not involve Trustmark, and no proof of presentment of the letter of credit was necessary for the government to convict under the Louisiana indictment.

Second, as the trial court explained, the bank fraud statute requires proof of two basic elements: (1) the defendant executed or attempted to execute a scheme or artifice to defraud or to obtain money or funds from a financial institution by false or fraudulent pretenses; and (2) the defendant knowingly and willfully committed the action or actions necessary to perpetrate that fraud. The Louisiana indictment, therefore, required that the government prove that Farmigoni knowingly and willfully intended to defraud First Financial. The Mississippi indictment charged that Farmigoni knowingly and willfully intended to defraud Trustmark. Although both indictments arose out of the same initial scheme, neither requires proof of intent to defraud the other unnamed financial institution.

Farmigoni further argues that, because the Louisiana indictment generally described the underlying scheme as one to defraud First Financial and "other financial institutions," his guilty plea under that indictment applied to the charges of fraud against both First Financial and Trustmark. The Louisiana indictment viewed as a whole does not provide adequate basis for Farmigoni's contention. The specific counts under which Farmigoni was convicted did not refer by name to any financial institution other than First Financial. When the indictment is read within the context of the clearly singular wording of the statute, which makes it a crime to defraud *a financial institution, see* 18 U.S.C. § 1344, First Financial emerges as the victim of the fraud. Indeed, an identifiable (and identified) defrauded bank is elemental to a violation of § 1344. The names of no other institutions either appear in the Louisiana indictment or are required for conviction under the bank fraud statute. Accordingly, the Louisiana indictment sets forth a separate and independent violation from the Mississippi indictment. We therefore uphold the ruling of the trial court.

*Double Time*

■ Farmigoni further contends that the Mississippi district court erred in making his sentence run consecutive to the Louisiana sentence. Relying on this Court's en banc opinion in *United States v. Hernandez*, 591 F.2d 1019 (5th Cir.1979), Farmigoni argues that defendants cannot be sentenced consecutively for two indictment counts alleging violations defined by the same statute and arising from the same transaction.

In *Hernandez*, the defendant was convicted of both possession with intent to distribute and distribution of heroin in violation of 21 U.S.C. § 841(a)(1). We concluded that consecutive sentencing was improper where the evidence showed each conviction was a single transaction which merged into one completed offense. *Id.* at 1022. The instant case, however, is dissimilar. As set forth above, Farmigoni has not been charged with an attempt to execute *and* execution of a scheme to defraud a single financial institution. Rather, he committed two separate violations of a single statute, involving distinct acts and independent intent to defraud two discrete financial institutions. Farmigoni's argument rests entirely on his rejected double jeopardy claim. The trial court did not abuse its discretion in imposing a consecutive sentence.

*Two Banks Too Many*

We therefore hold that the Mississippi district court properly dismissed Farmigoni's motion to dismiss on the ground of double jeopardy and correctly convicted

and sentenced Farmigoni for defrauding Trustmark.

AFFIRMED.