**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Stephen G. KOONCE, Defendant–Appellant.**

**No. 90–4081.**

United States Court of Appeals, Tenth Circuit.

Sept. 23, 1991.

(B.A.P.9th Cir.1990).

Samuel Alba and Robert G. Wing of Prince, Yeates & Geldzahler, Salt Lake City, Utah, for defendant-appellant.

Karen Skrivseth, Dept. of Justice, Washington, D.C. and Wayne T. Dance, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Before SEYMOUR and EBEL, Circuit Judges, and BROWN, Senior District Judge.*

EBEL, Circuit Judge.

This case presents two issues. First, we must decide whether the Double Jeopardy Clause (U.S. Const. amend. V), prohibits the conviction and imposition of a sentence for possession of a controlled substance where the same possession was used in a prior narcotics proceeding to increase the defendant's sentence under the United States Sentencing Guidelines. We hold that the Double Jeopardy Clause prohibits the subsequent conviction and sentence. Second, we must decide whether the Double Jeopardy Clause prohibits the imposition of a sentence for being a felon in possession of firearms where possession of the same firearms during commission of a narcotics offense was used to enhance the defendant's sentence in a prior narcotics proceeding under the United States Sentencing Guidelines. We hold that the Dou-

ble Jeopardy Clause does not preclude this subsequent conviction and sentence.

## FACTS

The defendant-appellant, Stephen Koonce, ran a methamphetamine distribution operation out of his Monticello, Utah residence. In late 1987, one of Koonce's customers, Darryl Petschen, pled guilty to charges of illegally distributing methamphetamine. Petschen named Koonce as his supplier and offered to help South Dakota and Minnesota authorities apprehend Koonce. Petschen made a series of tape recorded telephone calls to Koonce in Monticello requesting that Koonce sell him methamphetamine. Petschen then sent a letter to Koonce requesting that a quantity of methamphetamine be mailed to a designated post office box in Sioux Falls, South Dakota.

A package containing 443 grams of methamphetamine arrived at the post office box on February 4, 1988. Koonce's fingerprints were found on the outer wrappings of the package. Shortly thereafter, law enforcement officials obtained a warrant to search Koonce's residence. The authorities executed the warrant and discovered Petschen's letter to Koonce, a large number of firearms, and an additional 963 grams of methamphetamine stored in Koonce's freezer.

Koonce was charged in the United States District Court for the District of South Dakota with one count of distributing an unspecified amount of methamphetamine under 21 U.S.C. §§ 841(a)(1) and 846 (1988).[1] The jury found Koonce guilty of distributing the 443 grams he had mailed to the Sioux Falls post office box. However, when the district court calculated his sentence under the United States Sentencing Guidelines, it took into account two additional quantities of methamphetamines: (1) the 963 grams discovered in his house in Monticello, and (2) 6,463 grams Petschen testified he had purchased from Koonce

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

1. Unless otherwise specified, citations to the United States Code and the Sentencing Guidelines refer to the provisions in effect at the date of Koonce's South Dakota trial in 1988.

during the year prior to Koonce's arrest.[2] Thus, Koonce's South Dakota sentence was based upon his distributing a total of 7,869 grams of methamphetamine. The court calculated Koonce's initial offense level as 34 under U.S.S.G. § 2D1.1(a)(3) (1988) by referencing a total weight of 15,738 grams of cocaine.[3] After adding a two level enhancement for possessing firearms during the commission of the offense and calculating Koonce's criminal history as a level III, the South Dakota district court found that the appropriate sentencing range under the Guidelines was 235 to 293 months. The district court sentenced him to 240 months imprisonment, the statutory maximum under 21 U.S.C. § 841(b). In addition, the court sentenced Koonce to serve five years of supervised release following the completion of his twenty-year prison term. Finally, the court fined Koonce $50,000. The Eighth Circuit Court of Appeals affirmed Koonce's conviction and sentence on appeal. *United States v. Koonce*, 884 F.2d 349 (8th Cir.1989) (*Koonce I*).

The United States then decided to charge and prosecute Koonce in the United States District Court for the District of Utah for possession with intent to distribute the 963 grams of methamphetamine found at his Monticello residence under 21 U.S.C. § 841(a). In addition, Koonce was charged with being a felon in possession of numerous firearms under 18 U.S.C. § 922(g). Koonce immediately objected, arguing that the Double Jeopardy Clause protected him from being tried in the Utah district court for distributing the 963 grams of methamphetamine and for possessing the firearms. The district court refused to dismiss the indictment against him, and we affirmed. *United States v. Koonce*, 885 F.2d 720, 722 (10th Cir.1989) (*Koonce II*). We held that because Koonce had not been *charged* in South Dakota for any crime stemming from the 963 grams of methamphetamine

discovered in his Monticello residence, or for possessing the firearms, the Double Jeopardy Clause's ban against multiple prosecutions was not implicated. *Id.* Further, we agreed with the government that because Koonce had not yet been found guilty of the Utah offense—let alone punished—his claim based upon the Double Jeopardy Clause's ban against multiple punishments was not yet ripe for review. *Id.* The case was remanded back to the district court for trial.

The Utah district court found Koonce guilty on the methamphetamine possession charge as well as on the felon in possession of a firearm charge. On the methamphetamine count, the district court sentenced him to a term of ninety-seven months to be served concurrently with his South Dakota sentence. On the firearms charge, the court sentenced Koonce to a twelve month concurrent sentence. In addition, Koonce was sentenced to six years of supervised release to run concurrently with the five years of supervised release already imposed by the South Dakota court. At the time of sentencing, Koonce again raised his Double Jeopardy claims. The district court again dismissed this claim, and Koonce appealed. The issue being ripe for review, Koonce's appeal is before us a second time.

## DISCUSSION

■ There are two components of the Double Jeopardy Clause: the first protects against a subsequent prosecution for the same offense after either an acquittal or a conviction (the prosecution component), while the second protects against multiple punishments for the same offense (the punishment component). *See Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548 (1990). Koonce's Double Jeopardy claim pertaining to the methamphetamine distribution charge implicates the

---

**2.** Petschen testified that he had received twenty to thirty pounds of methamphetamine during this time; however, the court considered only 6,463 grams (14.22 pounds) for purposes of sentencing.

**3.** Under the sentencing guidelines, the penalty is based upon the number of grams of cocaine

involved, and thus, the methamphetamine had to be converted to an equivalent amount of cocaine by referencing an equivalency table.

The South Dakota district court's calculation was affirmed in *United States v. Koonce*, 884 F.2d 349, 352–53 (8th Cir.1989).

punishment component of the Clause[4] and will be addressed in Part I of this opinion. The gravamen of Koonce's Double Jeopardy claim pertaining to the firearms charge is based upon the prosecution component of the Clause and will be addressed in Part II of this opinion.

## I.

We employ a three-step analysis to determine the validity of Koonce's claim that the methamphetamine distribution sentence imposed by the Utah district court violated the punishment component of the Double Jeopardy Clause. We determine first whether, for purposes of the Double Jeopardy Clause, Koonce was punished in South Dakota for the methamphetamine found at his Monticello residence. Second, we determine whether Congress intended that an accused in Koonce's position should receive cumulative sentences from two separate proceedings where both sentences punish the accused for the exact same conduct. Third, we determine whether the punishment imposed by the Utah district court constitutes double punishment under the Double Jeopardy Clause where the sentence imposed runs concurrently with his South Dakota sentence.

■ *A. The South Dakota Punishment*—We begin with the language of the relevant constitutional provision: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend V. The text of the Clause prohibits double *prosecution* where each prosecution places the defendant in jeopardy of receiving punishment for the same offense. However, in addition to providing explicit protection against double prosecution, the Clause further prohibits the government from *punishing* its citizens twice for the same offense. *Grady,* 110 S.Ct. at 2090; *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173, 21 L.Ed.

872 (1873) ("It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution."); *see also* Comment, *Twice in Jeopardy,* 75 Yale L.J. 262, 266 n. 13 (1965) ("It is clear that preventing multiple punishment for the same offense was foremost in the minds of the framers of the double jeopardy clause.... Until joinder became permissible and commonplace, however, multiple punishment could only result from multiple trials."). The protection from double prosecution would certainly be a hollow one if the government were constitutionally permitted to develop a scheme to punish a person twice for the same conduct just so long as it did not subject him to two trials:

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence....
>
> ....
>
> The protection against the action of the same court in inflicting punishment twice must surely be as necessary, and as clearly within the maxim, as protection from chances or danger of a second punishment on a second trial.

*Ex parte Lange,* 85 U.S. (18 Wall.) at 168–69.

When the South Dakota district court sentenced Koonce, it punished him not only for distributing the methamphetamine that he mailed to Sioux Falls, but it also punished him for the 963 grams of methamphetamine discovered at his Monticello residence:

> In determining the base offense level, the [South Dakota] district court found that the methamphetamine weight should include ... that seized in the search of Koonce's Utah home (963 grams).... The court considered the methamphetamine seized in Utah ... because it found "that the distribution of methamphetamine by Mr. Koonce was satisfactorily established by a preponder-

4. *Koonce II* rejected Koonce's claim of double prosecution because it held that the use of the Utah methamphetamines for sentencing purposes in the South Dakota case did not amount to a prosecution for that conduct. 885 F.2d at 722. That ruling is not only binding precedent in the Tenth Circuit but is also res judicata as to Koonce.

ance of the evidence to be a continuing enterprise with Mr. Petschen."

*Koonce I*, 884 F.2d at 352 (footnote omitted). Had the South Dakota Court not factored the 963 grams of methamphetamine discovered in Koonce's Monticello residence into its sentencing calculation, it would have calculated Koonce's initial offense level at level 32.[5] After applying the two level upward adjustment for possessing a firearm, the final level would have been 34, which would have subjected Koonce to a range of 188 to 235 months as opposed to the 235 to 293 month range he was actually sentenced under in the South Dakota district court.

The South Dakota district court in punishing Koonce for the Utah methamphetamine was simply following the mandate of the United States Sentencing Guidelines, which requires that an accused be punished for "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). According to the guideline commentary, this aggregation is applicable even if a particular amount is not charged: "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.*, Commentary, Background ¶ 3; *see id.* Commentary, Application Note 2. The Sentencing Guideline approach to punishing defendants for conduct not charged in the indictment represents the guideline's "real offense" approach to drug crimes based upon the proposition that the amount of punishment inflicted on an accused should depend upon what really transpired as opposed to what was charged. *See id.* Ch. 1, Pt. A.4(a); *see also id.* § 1B1.3, Commentary, Application Note 2 (Nov. 1990):

For example, where the defendant engaged in three drug sales of 10, 15, and 20 grams of cocaine, as part of the same course of conduct or common scheme or plan, subsection (a)(2) provides that the total quantity of cocaine involved (45 grams) is to be used to determine the offense level even if the defendant is convicted of a single count charging only one of the sales.

In both the Utah proceeding and the South Dakota proceeding, defendant was punished for the exact same conduct, the possession of Utah methamphetamine with intent to distribute. Absent evidence that Congress intended such double punishment, this runs afoul of the Double Jeopardy Clause.

■ *B. Congressional Intent*—The next step in our analysis is to determine whether Congress *intended* an accused in Koonce's position to be subjected to two punishments, one based upon an increase in the base offense level to reflect an additional quantity of drugs not subject to the first prosecution and the other derived from a separate conviction and sentence based upon the defendant's possession of the same drugs used to enhance the first sentence. This is critical because the punishment component of the Double Jeopardy Clause is driven by legislative intent. If Congress did intend multiple punishments for a single act, then for purposes of Double Jeopardy analysis the combined punishment would simply be viewed as the appropriate punishment determined by Congress to represent the gravity of the offense and it would be upheld. *See Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985) ("There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and *punishing also the completed transaction.*" (quotation omitted) (emphasis in the original)).[6] Because Congress has the ulti-

---

5. The converted cocaine equivalent of the methamphetamine, exclusive of the amount discovered at Koonce's residence, would have fallen between 5 and 14.9 kilograms corresponding to a base offense level of 32. *See, supra*, n. 3 & accompanying text.

6. Of course, while Congress may legitimately intend that the punishments be cumulative, Congress's ability to subject an accused to multiple *prosecutions* in order to arrive at the punishments is controlled by the prosecution compo-

mate authority to determine the appropriate penalty for an offense, a court may not reject that penalty unless it violates the Eighth Amendment prohibition against cruel and unusual punishment. *See Ohio v. Johnson*, 467 U.S. 493, 499 n. 8, 104 S.Ct. 2536, 2541 n. 8, 81 L.Ed.2d 425 (1984) (noting that even where the offenses share identical elements, "if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end"). However, once Congress has determined the appropriate punishment for an offense, the government is prohibited from imposing the penalty on the accused more than once. *See Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) ("The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense....").

Absent evidence to the contrary, it is assumed "that Congress ordinarily does not intend to punish the same offense under two different statutes." *Ball v. United States*, 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985). In the instant case, there is no evidence that Congress intended that an individual who distributes a controlled substance should receive punishment both from an increase in the offense level under the Guidelines in one proceeding and from a conviction and sentence based on the same conduct in a separate proceeding.

We find strong support in the Sentencing Guidelines that Congress intended for quantities of illicit drugs to be aggregated into one punishment, rather than broken down into separate offenses and punished separately. One of the aims of the Guidelines is to stop prosecutors from manipulating the counts charged in an indictment, thereby abusing the sentencing process. *See* U.S.S.G. Ch. 1, Pt. A.4(a) ("[T]he Commission has written its rules for the treatment of multicount convictions with an eye toward eliminating unfair treatment that might flow from count manipulation."). To this end, the Guidelines provide for the "grouping" of certain offense conduct—particularly conduct involving narcotics violations—into a single punishment. *Id.* § 1B1.3, Commentary, Background ¶ 4 ("§ 3D1.2(d), which provides for grouping of multiple [narcotics] counts ... prevents double counting").[7]

Under U.S.S.G. § 3D1.1(a), "[w]hen a defendant has been convicted of more than one count, the court shall ... [g]roup the counts resulting in conviction into distinct Groups of Closely–Related Counts ("Groups") by applying the rules specified in § 3D1.2." Under U.S.S.G. § 3D1.2(d), counts are grouped together "[w]hen the offense level is determined largely on the basis of ... the quantity of a substance involved...." The list of offenses mentioned in U.S.S.G. § 3D1.2(d) includes distribution of narcotics covered by U.S.S.G. § 2D1.1. Finally, U.S.S.G. § 3D1.3(b) states that in cases where the counts are grouped together under U.S.S.G. § 3D1.2(d), "the offense level applicable to a Group is the offense level corresponding to the aggregated quantity...." This "grouping" procedure assures that an accused who is charged and convicted of several narcotics counts in one proceeding, all stemming from the "same course of conduct or common scheme or plan," will receive the same sentence he would have received had he been charged and convicted of one narcotics count based on the same facts.

Thus, under the Guidelines, had the government charged Koonce in the South Dakota district court with two separate

---

nent of the Double Jeopardy Clause. *See, infra,* Part II.

**7.** The Guidelines provide for "grouping" in two different categories of offenses: those in which the offense level is based "primarily on the ... quantity of substance involved (*e.g.*, ... drug trafficking ...)" (fungible offenses), and offenses that involve different but "closely interre-lated" harms (nonfungible offenses). U.S.S.G. Ch. 3, Pt. D, Introductory Commentary. The aggregation procedure for narcotics violations applicable in Koonce's case is limited to fungible offenses. We therefore do not address the Double Jeopardy implications of grouping nonfungible offenses.

counts—one based upon the methamphetamine mailed to Sioux Falls and one based upon the methamphetamine found in Monticello—he would have received a sentence identical to the one that was imposed in the South Dakota prosecution based upon the single count of mailing methamphetamine to Sioux Falls. It is difficult to believe that Congress would have intended the punishment to be larger if the government chose to proceed with two different proceedings (counting the Monticello drugs in both proceedings—once for purposes of sentence enhancement and once for purposes of punishment for the second conviction) than if it chose to consolidate all of the counts in one proceeding. The protections against prosecutorial charge manipulation strongly suggests that Congress did not intend such a result.[8]

The government, in its letter of supplemental authority, cites several cases which have upheld conviction and punishment for conduct that was previously used under the Guidelines to enhance the offender's sentence for other conduct. *United States v. Mack*, 938 F.2d 678 (6th Cir.1991); *United States v. Williams*, 935 F.2d 1531 (8th Cir. 1991); *United States v. Garcia*, 919 F.2d 881 (3d Cir.1990). These cases, however, are distinguishable, as none involved punishment for conduct that was previously aggregated into a defendant's base offense level for a related crime.

In *Mack* the defendant appears to have been sentenced toward the high end of a guideline range as a result of a failure to appear for sentencing, for which he was later indicted. 938 F.2d at 679. His offense level, however, and hence his sentencing range, were not increased as a result of his failure to appear.

Similarly, in *Garcia* there was no evidence that the defendant's base offense level in his first trial (for July and August 1988 drug counts) had been increased as a result of the conduct for which he was subsequently prosecuted (a June 1988 drug count). Interestingly, the court declined to rule on the issue now before us when it stated: "Use of the quantity of drugs in the alleged June transaction to calculate the base offense level for the July and August transactions poses a distinct issue, but one that is unnecessary to decide in this case." 919 F.2d at 887.

In *Williams* as well, the defendant's subsequently indicted offense conduct (jury tampering) was not aggregated with his initial offense conduct (selling pledged collateral) to compute his base offense level under the Guidelines (although his jury tampering conduct was used to adjust that level upward for obstruction of justice under Chapter 3 of the Guidelines). In any event, the court in that case vacated both sentences and remanded for a single sentence consistent with the Guidelines grouping procedure. Hence, the defendant would be punished only for the offense carrying the highest offense level, but not for both offenses. 935 F.2d at 1539. He was therefore not punished twice for jury tampering.

---

**8.** It has been suggested by the government that one part of the Guidelines clearly evinces an intent to punish twice for the same crime: The Guidelines specify that a "criminal history category" is to be applied in determining the sentence applicable to any given offense level, and the criminal history category clearly considers a defendant's prior criminal conduct for which he has already been punished once. U.S.S.G. § 1B1.1(f)–(g). We have no difficulty in drawing a distinction between the criminal history category and the offense level category. As discussed, *infra,* the punishment component of the Double Jeopardy Clause permits Congress to punish twice for the same conduct if it evinces a clear desire to do so. The Guidelines draw a clear distinction between using previously punished conduct to establish "criminal history" and using it to establish the "offense level." In the "criminal history" area, the previously punished conduct is used only to determine the "likelihood of recidivism and future criminal behavior...." *Id.* Ch. 4, Pt. A, Introductory Commentary. There is nothing inconsistent, however, in Congress's intent to consider prior criminal history to determine a defendant's character and need for punishment and Congress's intent that all related offenses be punished as a single offense rather than allowing the prosecutor to bifurcate the offenses to obtain a larger cumulative punishment. *Id.* Ch. 3, Pt. D, Introductory Commentary (The purpose of the Guidelines cumulative approach is "to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct.").

The government also cites *United States v. Farmigoni*, 934 F.2d 63 (5th Cir.1991). This was a pre-Guidelines case, however, and is therefore not indicative of Congress's intent under the Guidelines. Additionally, the holding in that case was unrelated to sentence enhancement: the court simply held that under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), two distinct crimes, rather than one, had been committed, and thus the Double Jeopardy Clause did not prevent two prosecutions, convictions, and punishments. 934 F.2d at 65.

In sum, the government has pointed to no authority that has held that Congress intended, in the Guidelines, to punish a defendant a second time for conduct that has previously been aggregated into the base offense level for a related sentence in an earlier prosecution. To the contrary, as we have pointed out above, there is substantial evidence that the Guidelines procedure for aggregating fungible offense conduct was intended to prevent exactly this type of double punishment.

■ *C. Concurrent Versus Consecutive* —The final question we address is whether the sentence imposed by the Utah district court violates the punishment component of the Double Jeopardy Clause even though the sentence runs concurrently with the South Dakota sentence.[9] We hold that under *Ball* it does.

In *Ball*, the defendant-petitioner, an ex-felon, had been indicted and convicted in the United States District Court for the Western District of Virginia of two firearm felonies—felon in receipt of a firearm and felon in possession of a firearm. The district court sentenced the petitioner to consecutive prison terms for the two convictions: three years on the receipt of a firearm count under 18 U.S.C. §§ 922(h)(1) and 924(a) (1982); and two years on the possession count under 18 U.S.C.App. § 1202(a)(1) (1982). The petitioner appealed the sen-

tences. The government conceded that both counts rested on the same conduct and that, therefore, consecutive sentences could not be imposed. The Fourth Circuit accepted the government's concession and remanded the case to the district court instructing it to make the sentences concurrent. The petitioner, still not satisfied, petitioned for certiorari to the Supreme Court. The Supreme Court granted the petition and reversed the Court of Appeals, instructing the district court to vacate one of the sentences. *Id.* 470 U.S. at 865, 105 S.Ct. at 1673.

The Supreme Court rejected the argument that because one of the sentences ran concurrently with the other, the Double Jeopardy Clause was not implicated: "One of the convictions, as well as its concurrent sentence, is authorized punishment for a separate offense.... The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence." *Id.* at 864–65, 105 S.Ct. at 1673–74. The Court based its decision on the practical consequences that follow from a conviction including the potential for an increased sentence under a recidivist statute, possible delays in parole eligibility, and the societal stigma that results from the conviction itself. *Id.* at 865, 105 S.Ct. at 1673. In the Court's view these consequences by themselves amounted to a punishment for double jeopardy purposes even though the incarceration time was concurrent to another sentence: "[T]he second conviction, even if it results in no greater sentence, is an impermissible punishment." *Id.* We note that another consequence of a concurrent sentence is that where an accused manages to avoid one of his sentences through collateral attack, he may still not be released because of a concurrent sentence stemming from the duplicative count. All of the preceding consequences flow from the additional conviction, not from the imposition of additional prison sentences or fines. *Ball*,

9. The sentence Koonce received in Utah is not completely concurrent with the South Dakota sentence because he received six years of supervised release as opposed to the five years he received from the South Dakota court. Because

we hold that even a totally concurrent sentence would violate the punishment component of the Clause, we need not address whether the one extra year of supervised release by itself violates the punishment component of the Clause.

therefore, defines punishment to include all of the consequences that flow from a conviction without limiting the concept of punishment to incarceration time, fines, and other penalties and restraints explicitly ordered by the court. It follows, in the present case, that the absence of an additional prison sentence does not render the second conviction constitutional.

Similarly, in *Ex parte Lange*, the petitioner had received two sentences and one conviction. The petitioner had been sentenced to one year's imprisonment and ordered to pay a two hundred dollar fine pursuant to a statute that provided that an accused could receive *either* a maximum of a one year sentence *or* a two hundred dollar fine but not both. The court, realizing its error, vacated the accused's sentence and resentenced him to a year in prison without crediting him for the time already served on the previous one year sentence. The Supreme Court reversed the new sentence on the grounds that he had already paid the two hundred dollar fine and had also served five days imprisonment on this first sentence. Thus, he could not now be resentenced to an additional year because that would represent double punishment for the same offense, even though it did not stem from a separate conviction. 85 U.S. (18 Wall.) at 175. The same logic bars Koonce's conviction and punishment by the Utah district court for a crime stemming from possession of methamphetamine, following the imposition of the convictionless first punishment by the South Dakota district court for his possession of the same drugs. The simple fact is that Koonce was punished by the South Dakota court for the methamphetamine found in Monticello and that he was punished again for the same conduct in the Utah district court by virtue of the fact that he was convicted for possessing the Utah methamphetamine with intent to distribute. Under the Double Jeopardy Clause and *Ball*, Koonce's right to be free from double punishment was violated.[10]

## II.

We now turn to the issue of whether Koonce's conviction in the Utah district court for being a felon in possession of a firearm under 18 U.S.C. § 922(g) violates the Double Jeopardy Clause where he had already received an enhanced punishment under the Sentencing Guidelines in the South Dakota district proceeding for possession of the same firearms. We begin by noting that the punishment component of the Double Jeopardy Clause was not triggered. The Utah and South Dakota district courts did not punish Koonce for the same offense, as the same offense is defined under *Blockburger*. 284 U.S. at 304, 52 S.Ct. at 182 ("[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). The two key elements under U.S.S.G. § 2D1.1(b)(1), the firearm sentencing enhancement, are (1) that the accused be in possession of the firearm, and (2) that the possession be during the commission of the narcotics offense. *See* U.S.S.G. § 2D1.1(b)(1). The key elements under 18 U.S.C. § 922(g), charged in the Utah proceeding, are (1) that the accused possessed a firearm, and (2) that the accused was a felon when he possessed the firearm. Although both require proof of possession of a firearm, U.S.S.G. § 2D1.1(b)(1) requires proof that the firearm was possessed by the accused during the commission of the drug offense, while U.S.C. § 922(g) requires proof that the accused was a felon at the time he possessed the firearm.[11]

10. As a result of this holding, the government will no longer have any legitimate purpose in prosecuting an accused in a separate proceeding when the accused has already received an enhanced punishment in an earlier proceeding for the same conduct under the Sentencing Guidelines. Even though the second *prosecution* is not technically barred by the Double Jeopardy Clause under *Koonce II*, any additional *punishment*, including any conviction, would be barred in the second prosecution. Thus, there would not appear to be any valid reason to pursue the second prosecution.

11. We note that in proving its case under 18 U.S.C. § 922(g) in the Utah district court, the prosecution relied on two prior felony convictions to establish that Koonce was a felon when he possessed the firearms in Monticello. The first was a possession of a controlled substance

Therefore, under *Blockburger* we cannot hold that the Utah district court violated the *punishment* component of the Double Jeopardy Clause when it sentenced him for violating 18 U.S.C. § 922(g).

Koonce argues in the alternative that the government violated the *prosecution* component of the Double Jeopardy Clause by bringing the 18 U.S.C. § 922 charge in Utah when he had already been prosecuted for the same conduct in South Dakota pursuant to U.S.S.G. § 2D1.1(b)(1). We previously rejected this claim, in *Koonce II*, 885 F.2d at 722, and that ruling is res judicata here. In *Koonce II*, we held that use of related criminal conduct to enhance another sentence pursuant to the Sentencing Guidelines is not equivalent to a prosecution for such related conduct. 885 F.2d at 722. Thus Koonce has faced only one prosecution for that offense and that was in the Utah prosecution.

## CONCLUSION

We hold that the Utah district court's conviction and imposition of a ninety-seven month sentence for distributing the methamphetamine found at Koonce's Monticello residence violated the Double Jeopardy Clause. We hold that conviction and imposition of a sentence for the firearms charge did not violate the Double Jeopardy Clause. Thus, we AFFIRM the conviction and sentence for the firearms charges and we REVERSE the district court and REMAND with instructions that it VACATE the narcotics conviction and sentence imposed under 21 U.S.C. § 841(a)(1).

felony of which Koonce was convicted in California in 1975. The second was a sexual offense felony of which Koonce was convicted in Minnesota in 1978.