**UNITED STATES of America**

v.

**John W.S. McCORMICK.**

**Crim. A. No. 91–25–01.**

United States District Court, D. Vermont.

July 30, 1992.

---

John Conroy, Asst. U.S. Atty., Burlington, Vt., for U.S.

Barry Fallick, Bobbi Sternheim, Rochman, Platzer, Fallick & Rosmarin, New York City, for defendant.

## ORDER

BILLINGS, District Judge.

On December 6, 1991, defendant John W.S. McCormick filed a motion to dismiss on double jeopardy grounds. A hearing on the matter was held on July 17, 1992.[1] For the reasons stated herein, defendant's motion is granted in part and denied in part.

### Background

On February 7, 1991, defendant was charged in the District of Connecticut in a 31–count indictment with bank fraud and related crimes. The alleged loss resulting from these crimes totaled approximately $75,000. Three months later, on May 16, 1991, defendant was charged in the District of Vermont in a 41–count superseding indictment with bank fraud, mail fraud and related crimes. The alleged loss resulting from these crimes exceeded $4 million.

On August 21, 1991, following a jury trial in the District of Connecticut, defendant was convicted on all counts in the Connecticut indictment. On November 5, 1991, Judge Alan Nevas, sitting in the Dis-

---

1. The six month delay in hearing the motion to dismiss was due to defendant's request that we stay action on the motion pending defendant's appeal of his sentence imposed in a related matter by the District Court in Connecticut. On May 18, 1992, the Second Circuit Court of Appeals affirmed defendant's Connecticut sentence, and thus, the motion to dismiss became ripe for review.

trict of Connecticut, sentenced defendant to concurrent terms of imprisonment of 46 months on each count of conviction.

At the time of sentencing, the government filed a sentencing memorandum that specified not only the offense conduct in Connecticut, but also various other similar schemes to defraud that defendant attempted to execute in a number of other states, including Vermont.[2] The government proffered these similar instances of fraudulently obtained bank loans as relevant conduct pursuant to U.S.S.G. § 1B1.3(a)(2). Accordingly, the government argued that the loss arising from defendant's conduct fell between the $2,500,000 and $5,000,000 range, with $75,000 attributed to losses in Connecticut and the approximate $4,000,000 remainder attributed to losses in Vermont. Judge Nevas, persuaded that the Vermont conduct should be considered as relevant conduct, adopted the government's sentencing memorandum and found that the total losses properly attributed to defendant amounted to $4,080,000.

U.S.S.G. § 2F1.1(b)(1)(N) triggers a 13 level enhancement if the losses fall within the $2,500,000 to $5,000,000 range. Accordingly, Judge Nevas added 13 points to defendant's original base offense level of 6 to arrive at an adjusted level of 19.[3] Moreover, 2 additional points were added for more than minimal planning, increasing defendant's total offense level to 21. The guideline range based on an offense level 21 and a criminal history category of I is 37 to 46 months. Judge Nevas sentenced defendant to concurrent terms of imprisonment of 46 months on each count of conviction, in addition to a 3 year term of supervised release and restitution of $61,000.

Defendant appealed this sentence to the United States Second Circuit Court of Appeals, arguing that consideration of the Vermont conduct was improper. On May 18, 1992, the Second Circuit affirmed the sentence, holding that the district court's inclusion of the Vermont frauds was proper under U.S.S.G. § 1B1.3(a)(2), which allows for consideration of relevant conduct. *United States v. McCormick*, No. 91–1665, slip op. at 3 (2d Cir. May 18, 1992), 969 F.2d 1042, (Table).

With this background, we now turn to defendant's motion to dismiss the Vermont indictment. The question is whether the Vermont indictment must be dismissed on double jeopardy grounds in view of the District of Connecticut's consideration and use of the Vermont indictment in sentencing defendant for his conviction on the Connecticut conduct?

### Discussion

■ The Double Jeopardy Clause of the Fifth Amendment provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. There are two components of the Double Jeopardy Clause, the prosecution component and the punishment component. Whereas the prosecution component protects against a subsequent prosecution for the same offense after either an acquittal or conviction, the punishment component protects against multiple punishments for the same offense. *United States v. Koonce*, 945 F.2d 1145, 1148, 1149 (10th Cir.1991). In this case, we are dealing with the punishment component of the Double Jeopardy Clause, because the District of Connecticut's "use" of the Vermont indictment at sentencing is not considered a "prosecution" for that conduct.[4]

Defendant argues that the Vermont indictment must be dismissed because he has already received the full sentence permitted for the conduct alleged in the Vermont indictment. Defendant claims that jeopar-

---

**2.** Vermont was the only state that actually suffered monetary losses.

**3.** A base level of 6 results when only defendant's Connecticut conduct is taken into consideration.

**4.** The court in *United States v. Koonce*, 885 F.2d 720, 722 (10th Cir.1989) held that the use of related criminal conduct to enhance another sentence is not the equivalent of a prosecution for that conduct. Accordingly, consideration of the Vermont indictment in the Connecticut sentencing is not the equivalent of prosecution for the Vermont indictment.

dy has attached because he has been serving his sentence since its imposition by Judge Nevas on November 5, 1992. *United States v. Von Moos,* 660 F.2d 748, 749 (9th Cir.1981) (jeopardy attaches in double punishment context when defendant begins serving his sentence).

On the contrary, the government argues that the Vermont indictment should not be dismissed because defendant was not punished for the Vermont conduct; rather, the Vermont conduct merely enhanced the Connecticut sentence and put the Connecticut fraud in proper perspective. Because defendant was not punished for his Vermont conduct, the government argues, jeopardy did not attach. In the alternative, the government submits that even if the Double Jeopardy Clause bars a Vermont prosecution of the Vermont offenses used to increase defendant's base offense level in Connecticut, not all of the counts in the Vermont indictment were so used by the District of Connecticut. Accordingly, the government claims that those counts are not barred.

*I. Punishment vs. Enhancement*

■ The government's first contention is that a defendant is not being "punished" within the meaning of the Double Jeopardy Clause when a sentencing court considers relevant conduct, which is not the subject of the instant conviction, pursuant to U.S.S.G. § 1B1.3(a)(2), despite any increase in a defendant's original base offense level and therefore penalty. Thus, the argument goes, Judge Nevas' consideration of the Vermont indictment at sentencing constituted enhancement, as opposed to punishment, for his Vermont conduct. We reject this argument.

Although we recognize that the purpose underlying U.S.S.G. § 1B1.3(a)(2) is to allow the consideration of relevant conduct to determine the seriousness of a criminal conviction in the context of a defendant's criminal conduct as a whole, we are not persuaded that this consideration, if it results in a penalty enhancement, is not punishment in the double jeopardy context. Words such as "enhancement," "aggravating" and "proper context" only serve, we believe, to muddle reality. When the legalistic jargon is peeled away, the fact remains that defendant, if convicted and sentenced on the Vermont indictment, will face double punishment for the Vermont conduct.

In reaching this conclusion, we necessarily decline to follow the language in *United States v. Carey,* 943 F.2d 44, 46 n. 4 (11th Cir.1991), where the Eleventh Circuit stated:

> We recognize that terminology in the double jeopardy area can be confusing. *Enhancement of a sentence based on criminal conduct other than that underlying the instant conviction has the practical effect of penalizing the defendant for that conduct.* However, it is not considered "punishment" for that conduct in the double jeopardy context because the court is sentencing the defendant only for the instant offense, which is considered more serious because of the defendant's other criminal conduct. (emphasis added).

We are more interested with the "practical effect" of considering other relevant conduct. In this case, consideration of the Vermont indictment undoubtedly elevated the seriousness of defendant's Connecticut conviction, and we find nothing wrong with utilizing the Vermont indictment in this way. However, while it is one thing to use the Vermont conduct to expose the seriousness of defendant's Connecticut conviction and characterize it as more than "rookie" bank fraud, it is quite another to use the Vermont conduct to increase defendant's base offense level by 13 points, and then prosecute defendant for that same conduct again in the District of Vermont, with the same penalty implications.

The situation in *United States v. Koonce,* 945 F.2d 1145 (10th Cir.1991) is instructive. In that case, defendant, who ran a methamphetamine distribution operation out of his Utah residence, mailed 443 grams of methamphetamine to South Dakota on request of a prior customer who was also a confidential informant. *Id.* at 1147. Defendant's operation was eventually dis-

208

covered, and a subsequent warrant search of defendant's Utah residence uncovered 963 additional gram of methamphetamine. *Id.* The District of South Dakota charged defendant with one count of distributing 443 grams of methamphetamine, and a jury convicted defendant. *Id.* At sentencing, the District of South Dakota took into account not only the 443 grams mailed to South Dakota, but also the 963 grams found in defendant's Utah residence and 6,463 grams that the confidential informant testified that he had purchased from defendant. *Id.* at 1147–48. Defendant appealed the inclusion of the 963 grams and 6,463 grams, however, his sentence was upheld on appeal. *Id.* at 1148.

Subsequently, the District of Utah charged defendant with possession with intent to distribute 963 grams of methamphetamine, and defendant was convicted and sentenced to 97 months to be served concurrently with his South Dakota sentence. *Id.* Defendant appealed on double jeopardy grounds to the Eleventh Circuit Court of Appeals. *Id.*

The Eleventh Circuit held that defendant's Utah sentence violated the punishment component of the Double Jeopardy Clause. *Id.* at 1154. In doing so, the Appeals Court considered the following three questions in its double jeopardy analysis: (1) whether defendant was punished in the first forum, here the District of South Dakota, for the relevant conduct, namely the 963 grams of methamphetamine found at the Utah residence; (2) whether Congress intended that an accused in defendant's position should receive cumulative sentences from two separate proceedings where both sentences punish defendant for the exact same conduct; and (3) whether the punishment imposed by the second forum, here the District of Utah, constitutes double punishment under the Double Jeopardy Clause where the sentence runs concurrently with the sentence imposed in the first forum. *Id.* at 1149.

In the first inquiry, the Appeals Court concluded that although the District Court of South Dakota properly followed the mandate of U.S.S.G. § 1B1.3(a)(2) in taking into account the 963 grams of methamphetamine seized in Utah, the court nevertheless "punished" defendant for that conduct because his base offense level increased by two points, from 32 to 34, due to the inclusion of the 963 grams. *Id.* at 1150. This 2 level increase also increased the corresponding penalty range. *Id.* Thus, the Appeals Court concluded, defendant was punished in the District of South Dakota for possession of 963 grams of methamphetamine with intent to distribute, and he was also punished for the same conduct in the later prosecution in the District of Utah. *Id.*

In the second inquiry, the Appeals Court determined that Congress did not intend that an accused in defendant's position be subjected to two punishments, one punishment based on an increase in the base offense level to reflect relevant conduct not part of the first prosecution, and the other punishment based on a separate conviction and sentence for the relevant conduct used to enhance the first sentence. *Id.* The Appeals Court found strong support in the Sentencing Guidelines that Congress intended to combine certain offenses, particularly narcotics offenses, into a single punishment, thereby depriving prosecutors of the opportunity to manipulate the counts charged in an indictment. *Id.* at 1151.

Finally, under the third inquiry, the Appeals Court held that even though the sentence imposed by the second forum, here the District of Utah, was to run concurrently with the sentence imposed by the first forum, the Double Jeopardy Clause was still violated. *Id.* at 1153.[5] The Appeals Court relied on *Ball v. United States* in concluding that a second sentence, even though totally concurrent with a prior sentence, would violate the Double Jeopardy Clause. 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985) ("the second conviction, even if it results in no greater

5. Although the Utah sentence in *Koonce* was not totally concurrent with the South Dakota sentence, the Appeals Court noted that even a total-ly concurrent sentence would also violate the Double Jeopardy Clause. *Id.* at 1153 n. 9.

sentence, is an impermissible punishment"). Thus, after its three-pronged analysis, the Appeals Court concluded that defendant had been punished twice for the possession of 963 grams of methamphetamine, and stated:

As a result of this holding, the government will no longer have any legitimate purpose in prosecuting an accused in a separate proceeding when the accused has already received an enhanced punishment in an earlier proceeding for the same conduct under the Sentencing Guidelines. Even though the second *prosecution* is not technically barred by the Double Jeopardy Clause ... any additional *punishment*, including any conviction, would be barred in the second prosecution. Thus, there would not appear to be any valid reason to pursue the second prosecution.

*Id.* at 1154 n. 10.

■ We now turn to the *Koonce* three-part inquiry in the context of our case. First, was defendant punished in the District of Connecticut for his Vermont conduct? We hold that defendant was indeed punished; Judge Nevas increased defendant's base offense level by 13 points after consideration of the Vermont conduct, and the corresponding range of appropriate penalties increased dramatically. In so holding, we reject the government's attempt to characterize a 13 level increase as "enhancement" instead of "punishment." We note that here, as in *Koonce*, the government has cited several cases that have upheld a conviction and punishment for conduct that was previously used to enhance an offender's sentence for other conduct. These cases, however, are distinguishable because in each of those cases, the base offense level in the initial sentencing did not increase upon consideration of the other conduct. *See United States v. Mack,* 938 F.2d 678, 679 (6th Cir.1991) (defendant's failure to appear for sentencing, for which he was later indicted, resulted in sentence in high end of guideline range, but did not change base offense level or

sentencing range); *United States v. Williams,* 935 F.2d 1531, 1538 (8th Cir. 1991) (defendant's jury tampering, for which he was later indicted, not aggregated with his initial offense to compute base offense level); *United States v. Garcia,* 919 F.2d 881, 884 (3rd Cir.1990) (base offense level in first drug sentencing not increased as result of other drug conduct for which defendant was later prosecuted). Thus, we conclude that defendant was punished in the District of Connecticut for the Vermont conduct.

Second, did Congress intend that an accused in defendant's position receive cumulative sentences for the exact same conduct, that is, one sentence based on an increase in the base level offense in an unrelated first prosecution and the other based on a separate conviction and sentence for the conduct used to enhance the first sentence? As in *Koonce*, we find no clear evidence that Congress intended that an individual who commits bank fraud in two states should receive punishment both from an increase in the base offense level in one proceeding and from a conviction and sentence based on the same fraud in a second proceeding.[6]

■ Finally, although defendant has not yet been convicted in Vermont, much less sentenced, we are compelled to hold, under the Supreme Court's decision in *Ball v. United States,* that even a totally concurrent sentence in the District of Vermont would violate the punishment component of the Double Jeopardy Clause. 470 U.S. 856, 865, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740 (1985). As the Supreme Court recognized in *Ball*, there are practical consequences that result from a second conviction, including the potential for an increased sentence under a recidivist statute, possible delays in parole eligibility and societal stigma that follows a conviction. *Id.* at 865, 105 S.Ct. at 1673–74.

In sum, we hold that if the Vermont indictment were allowed to proceed against

---

6. We note that defendant has not yet been convicted, much less sentenced, in the District of Vermont. However, we base our discussion on

the premise that defendant has already been sentenced in Vermont.

defendant and he were tried and convicted in the District of Vermont, he would be subjected to double punishment for this conduct in violation of the punishment component of the Double Jeopardy Clause. However, our inquiry does not end there. We hold that *only those Vermont counts which Judge Nevas actually considered and which defendant was actually punished for* are barred from further prosecution in Vermont. Because we find that Judge Nevas did not consider all 41 counts of the Vermont indictment, defendant was not punished for all 41 counts. Consequently, we must now consider which counts are still viable for prosecution in the District of Vermont.

## II.  Viable Counts

The 41–count superseding Vermont indictment may be broken down as follows:

Bank Fraud:

| | | |
|---|---|---|
| Counts | 1–14 | Bradford National Bank |
| Counts | 15–19 | First National Bank |
| Counts | 20–27 | Lyndonville Savings Bank |
| Counts | 28–29 | Howard Bank |
| Count | 30 | Citizens Bank & Trust |
| Counts | 31–33 | Wells River Savings Bank |
| Count | 34 | Conspiracy involving the Bradford National Bank, First National Bank and Lyndonville Savings Bank |

Obstruction Count

| | | |
|---|---|---|
| Count | 35 | False statements to FBI during investigation of these offenses |

Mail and Wire Fraud Counts

| | | |
|---|---|---|
| Counts | 36–38 | General Motors Corporation |
| Counts | 39–40 | Subaru franchise |
| Count | 41 | Marine Midland Automotive Financial Corporation |

The government contends that Judge Nevas did not consider any conduct described in counts 30–41 of the indictment. Had such conduct been included in the specific offense calculation, the government argues, the losses would have exceeded $5,000,000, and would have therefore triggered a 14 level enhancement, instead of the 13 level enhancement defendant actually received after Judge Nevas calculated the losses as falling within the $2,500,000 to $5,000,000 range.[7] In order to determine which counts were actually included in the loss computation, then, we now turn to the transcript of the Connecticut sentencing and the government's sentencing memorandum.

■ We have already noted that Judge Nevas adopted and incorporated the government's sentencing memorandum into the sentencing judgment. However, because Judge Nevas adopted the government's memorandum in general terms only, we must decide which counts actually played a role in his loss computation. This determination is crucial because defendant

7. The government's submits that Judge Nevas arrived at the total loss computation of $4,080,000 by using the following:

| | | |
|---|---|---|
| Connecticut: | American National Bank | $   75,000 |
| Vermont: | Bradford National Bank | .  $  750,000 |
| | Herbert Gray Loan | $1,820,000 |
| | First National Bank | $  835,000 |
| | Lyndonville Savings Bank | $  700,000 |
| | Total: | $4,180,000 |

The government submits that the $100,000 discrepancy between this total figure and the

will only have been punished for those counts actually used to increase his base offense level via the loss computation. Consequently, we will adhere to the following principle: in order for the government to be barred from prosecuting defendant in the District of Vermont on a particular count, that count must have involved a financial loss (because otherwise it would not have contributed to an increase in defendant's base offense level) and must have been factored into Judge Nevas' loss computation. With this principle in mind, we now turn to counts 30–41.

■ As to count 30, involving the Citizens Bank & Trust ("Citizens"), we find that although the fraud surrounding Citizens was detailed in the government's memorandum, the fact that Citizens did not suffer any financial loss as the result of defendant's fraud necessarily means that this count could not have affected Judge Nevas' loss computation.[8] If it did not affect the loss computation, it could not have contributed to any increase in defendant's base offense level, and if it did not adversely affect defendant's base offense level, defendant was not punished for this conduct. Consequently, the government is not barred from prosecuting defendant on count 30 in the District of Vermont.

On counts 31–33, involving the Wells River Savings Bank ("Wells"), we find, as above, that even though the government's memorandum included the Wells fraud, the fact that no financial loss occurred as a result of this fraud means that these counts could not have contributed to the loss computation, and consequently to any increase in defendant's base offense level.[9]

Thus, defendant was not punished for this conduct, and the government is not barred from prosecuting defendant on these counts in the District of Vermont.

■ As to count 34, which charges defendant with conspiracy against the Bradford National Bank, the First National Bank and the Lyndonville Savings Bank, we find that this count did play a role in the increase in defendant's base offense level. Judge Nevas included in the loss computation the defendant's fraud, and resulting financial losses, committed against each individual bank. Indeed, the government admits in its July 17, 1992 affidavit that Judge Nevas reached the $4,080,000 total figure by including, among other losses, $750,000 from the Bradford National Bank, $835,000 from the First National Bank and $700,000 from the Lyndonville Savings Bank.[10] Thus, because the fraud against each individual bank was considered in the loss computation, and therefore contributed to an increase in defendant's base offense level, the government would be prohibited from prosecuting defendant in the District of Vermont on any one of these individual bank fraud counts. How then, could the government possibly support a conspiracy count in the District of Vermont when the underlying counts would be barred? We find then, for all practical purposes, that the government is barred from prosecuting defendant for this count in the District of Vermont.

■ On count 35, which charges defendant with making false statements to the FBI in the course of that agency's investigation into the alleged offenses, we find no mention of this count anywhere in the

---

$4,080,000 calculated by Judge Nevas appears to be an arithmetical error.

8. The government's sentencing memorandum states that in February of 1989, defendant applied for a $2.5 million line of credit with Citizens, and falsified his 1986 and 1987 individual income tax returns. Citizens, however, was unable to process that large a loan and invited the Shawmut Bank of Boston to participate. Shawmut Bank, after a full investigation of defendant, declined to do so. Sentencing Memorandum at 9–10.

9. The government's memorandum stated that in January of 1990, defendant submitted a loan application to Wells for a $125,000 mortgage, and that he submitted a false financial statement and a false 1987 individual tax form. Wells denied defendant's application. Sentencing Memorandum at 10.

10. Counts 1–14 of the Vermont indictment involve fraud against the Bradford National Bank, counts 15–19 involve fraud against the First National Bank of Vermont and counts 20–27 involve fraud against the Lyndonville Savings Bank.

government's sentencing memorandum or in the transcript of sentencing. Consequently, it could not have possibly contributed to Judge Nevas' loss computation or defendant's base offense level increase. Thus, the government is not barred from prosecuting defendant on this count in the District of Vermont.

■ As to counts 36–38, which charge defendant with mail fraud in applications for General Motors Corporation automobile franchises, we find that Judge Nevas did consider this conduct in his loss computation. The government's memorandum states that defendant, through accountants, falsely represented on General Motors franchise applications that his annual net income for the past five years was between $700,000 and $800,000. We find that Judge Nevas considered these losses. In fact, the government, in its affidavit, notes that the loss attributed under the "Herbert Gray" loans amounts to $1,820,000. We find that the fraud against General Motors is included in this amount. Thus, the government is barred from prosecuting defendant on these counts in the District of Vermont.

■ On counts 39–40, which charge defendant with mail fraud in the acquisition of a Subaru franchise, we find that this conduct was not included in Judge Nevas' loss computation because the government's memorandum did not specify what losses, if any, Subaru suffered as a result of defendant's fraud.[11] Therefore, because this conduct did not contribute to an increase in defendant's base offense level, he could not have been punished for this conduct. Thus, the government is not barred from prosecuting defendant on these counts in the District of Vermont.

■ Finally, as to count 41, which charges defendant with defrauding the Marine Midland Automotive Financial Corpo-

ration ("Marine"), we find that although the sentencing memorandum acknowledged this fraud and valued Marine's total losses at $260,000, Judge Nevas did not factor this figure into his loss computation.[12] Therefore, the government is not barred from prosecuting defendant on this count in the District of Vermont.

Finally, although the government contests only counts 31–40, we find, on further review, that Judge Nevas did not consider counts 28–29, which charge defendant with fraud against the Howard Bank. Because this fraud was not mentioned in the government's sentencing memorandum, Judge Nevas could not have considered it. Thus, the government may proceed against defendant in the District of Vermont on these counts.

### Conclusion

For the reasons stated herein, defendant John W.S. McCormick's motion to dismiss is GRANTED in part and DENIED in part. As to counts 28, 29, 30, 31, 32, 33, 35, 39, 40 and 41, the government may proceed against defendant in the District of Vermont, and so defendant's motion to dismiss is DENIED as to these counts. As to counts 1–27, 34, 36, 37 and 38, the government is barred from further prosecution in the District of Vermont on double jeopardy grounds, and thus defendant's motion to dismiss is GRANTED as to these counts.

SO ORDERED.

---

**11.** The memorandum states that in January of 1989, defendant applied to Subaru of New England for a franchise, and in doing so fraudulently reported that his annual income was $987,000. Defendant also concealed his 1982 bankruptcy from Subaru. Subaru granted defendant

a franchise, and it ultimately failed under defendant's management.

**12.** We agree with the government's assessment of how Judge Nevas reached the $4,080,000 total losses figure, which is set forth in greater detail in footnote 7 of this opinion.