**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

No. 93-2245

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

STEVEN KURT WITTIE,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Texas

---

(June 23, 1994)

Before HIGGINBOTHAM and WIENER, Circuit Judges, KAUFMAN,[*]
District Judge.

WIENER, Circuit Judge:

Plaintiff-Appellant the United States (the government) appeals
the district court's dismissal of its two-count indictment that
charged Defendant-Appellee Steven Kurt Witte[1] with conspiracy and
attempt to import 1,091 kilograms of cocaine into the United
States.  The district court dismissed the indictment on grounds

---

[*]District Judge of the District of Maryland, sitting by
designation.

[1]Witte, not Wittie, is the correct spelling.

that punishment for the indicted offense would violate the multiple punishments prong of the Double Jeopardy Clause of the Eighth Amendment through inclusion of the indicted offense in relevant conduct at sentencing for a related offense to determine Witte's base offense level. We disagree with the district court's conclusion that Witte would be subjected to impermissible multiple punishments for the same offense and therefore reverse and remand.

I

FACTS AND PROCEEDINGS

In August 1989, undercover DEA Agent Roger Norman negotiated with Dennis Mason in Tucson, Arizona to transport marijuana from Mexico into the United States. The negotiations were unsuccessful, but discussions between Norman and Mason resumed in Houston in June 1990. At that time, Witte, Mason, and Tom Pokorny planned to import marijuana from Mexico and cocaine from Guatemala. Both the Mexico deal and the Guatemala deal were going on simultaneously. Norman's job would be to fly the contraband into the United States.

In July 1990, the Mexican marijuana source advised that cocaine might be added to the shipment if there were room on the plane or if marijuana were not available. The following month, Norman was told that the Mexicans were ready with 4,400 pounds of marijuana. Once Norman learned the coordinates of the airstrip, arrangements were made to have the participants arrested in Mexico. On August 12, 1990, Mason and four others were apprehended. Instead of marijuana, 591 kilograms of cocaine were seized. The following day, while still undercover, Norman met Witte to explain

that the pilots had been unable to land in Mexico because police had shown up at the airstrip.

Witte, Mason, and Pokorny were not charged with conspiracy and attempt to import cocaine at the time because Mason was incarcerated in Mexico and Pokorny's whereabouts were under investigation. All contact between Witte and Norman ceased until January 1991.

Norman next contacted Witte in January 1991 and asked Witte if he were interested in purchasing 1000 pounds of marijuana from Norman. Witte answered affirmatively, and said that he would call Norman to tell him whether he could raise the $50,000 downpayment. Witte telephoned three days later from Denver, Colorado stating that he had the downpayment. Witte asked NormanSQwho still had possession of Witte's horse trailer from the prior activitiesSQto return the trailer so that it could be used as a load vehicle for the marijuana. Witte stated that he would bring from Denver a motor home owned by Sam Kelly to use as a second load vehicle.

On February 7, 1991, Witte met Norman in Houston and informed him that he could only come up with half of the downpayment. Norman agreed to give Witte 1000 pounds of marijuana for $25,000 in downpayment and to allow Witte three days to obtain the balance. Witte introduced Norman to Kelly and showed Kelly's motor home and its various hidden compartments to Norman. Fellow undercover officers took the motor home and trailer to load the marijuana, at which time Witte and Kelly took Norman to Witte's hotel room to view the money. The two vehicles arrived loaded with approximately

3

375 pounds of marijuana.[2] Witte and Kelly took possession and were promptly arrested.

The government indicted Witte for (1) conspiring to possess with intent to distribute more than 100 kilograms of marijuana[3] and (2) aiding and abetting possession with intent to distribute marijuana (collectively, the marijuana offense).[4] The charges resulted from the January-February 1991 "reverse-buy" of marijuana. Facing a statutory range of 5-40 years,[5] Witte entered a Rule 11(e)(1)(B) plea agreement with the government.

Witte pleaded guilty to the substantive count of aiding and abetting possession with intent to distribute marijuana and agreed to cooperate with the government by providing truthful and complete information concerning the charged offense as well as any others about which he might be questioned. The government agreed to dismiss count one of the indictmentSQconspiracy to possess with intent to distribute in excess of 100 kilos of marijuana from January 25, 1991 through February 8, 1991SQand to file a §5K1.1 motion if Witte's cooperation amounted to substantial assistance. Although not expressed in the recitation of terms of the agreement, the government states that Witte was also promised a recommendation to a three-year cap if he brought in Pokorny, who was involved in

---

[2]The vehicles were actually loaded with approximately 1,000 pounds of marijuana, but the government stipulated to the lesser quantity.

[3]21 U.S.C. § 841(a)(1), (b)(1)(B); 21 U.S.C. § 846.

[4]21 U.S.C. § 841(a)(1), (b)(1)(B); 18 U.S.C. § 2.

[5]21 U.S.C. § 841(b)(1)(B).

4

the cocaine offense.  Although Witte did not assist the government in locating Pokorny, Witte's cooperation did cause his co-defendant in the marijuana offense, Sam Kelly, to plead guilty.

At sentencing, the district court found that the marijuana and cocaine offenses were part of the "same course of conduct."  Over objections by both Witte and the government, the court included the cocaine in relevant conduct to determine Witte's base offense level.[6]  The government urged the court to accept the parties' position that the cocaine deal was not relevant to the marijuana deal.  The government argued against inclusion of the cocaine because it planned to indict Witte later for the cocaine offense. If the cocaine were not included in relevant conduct, the government could seek consecutive sentences for the cocaine and marijuana offenses.  On the other hand, Witte objected to inclusion of the cocaine because he hoped for a shorter sentence:  if only the 375 pounds of marijuana were considered, the Guideline range would be 63 to 78 months rather than 292 to 365 months.

Witte's base offense level was pegged at 40, with a Guideline range of 292 to 365 months.  From that base offense level, Witte received a 2-level increase for his aggravating role in the offense and an offsetting 2-level decrease for acceptance of responsibility.  The court granted the government's §5K1.1 motion

---

[6]It is not clear whether the court determined the quantity of drugs involved in the cocaine offense to be 591 kilos (the amount seized) or 1,091 kilos (the amount seized plus an additional 500 kilos discussed).  But inclusion of either quantity in relevant conduct results in a Guideline range of 40 (500-1500 kilos of cocaine).

5

for downward departure based on Witte's substantial assistance.  By virtue of that departure, Witte was sentenced to 144 monthsSQ148 months below the minimum sentence of 292 months under the pre-departure Guideline range.  Witte appealed, but the appeal was dismissed due to Witte's failure to file a brief.

The government then indicted Witte and co-defendant Pokorny on two additional counts:  (1) conspiring to import cocaine[7] and (2) aiding and abetting in the attempt to import cocaine[8] (collectively, the cocaine offense).[9]  The indictment alleges that, between August 1989 and August 1990, Witte tried to import about 1,091 kilograms of cocaine from Central America.  Witte moved to dismiss, arguing that he had already been punished for the cocaine offense because the cocaine was included in relevant conduct at sentencing for the marijuana offense.  Witte also argued that the indictment breached the plea agreement.

The district court dismissed the indictment on grounds that punishment for the indicted offense would violate the multiple punishments prong of the Double Jeopardy Clause of the Eighth Amendment because the indicted offense had been included in relevant conduct at sentencing for the marijuana offense to determine Witte's base offense level.  The court's conclusion on

---

[7]21 U.S.C. §§ 952(a), 960(b)(2)(B), 963.

[8]21 U.S.C. §§ 952(a), 960(b)(2)(B) and 18 U.S.C. § 2.

[9]Although the "cocaine offense" involved the importation of cocaine and marijuana, it is referred to as the cocaine offense to distinguish it from the 1991 activities involving marijuanaSQthe "marijuana offense."

6

the breach of the plea agreement issue is not so clear, but it does not appear that the indictment was dismissed on that basis.[10] The government timely appealed the dismissal of the indictment.

## II

## ANALYSIS

1. Double Jeopardy

    A.    Standard of Review

We review de novo the dismissal of the cocaine indictment on grounds of double jeopardy.[11]

    B.    Multiple Punishments Prohibited?

The Double Jeopardy Clause provides that no one shall "be subject for the same offense to be twice put in jeopardy of life or limb."[12]   The Supreme Court has left no doubt that the clause protects defendants from both multiple prosecutions and multiple punishments for the "same offense."[13]   Witte argues that the government's present attempt to punish him for the cocaine offense violates double jeopardy's multiple punishments prong:   he has

---

[10]The court stated that "[t]he effect of permitting such carving also defeats the spirit and intent of the plea bargaining process.  While the government may give a benefit during the plea bargaining process, only the courts are permitted to take it away."  The minute entry reads, "[T]he motion to dismiss on the basis of double jeopardy is granted."

[11]United States v. Vasquez-Rodriquez, 978 F.2d 867, 870 (5th Cir. 1992); Baker v. Metcalfe, 633 F.2d 1198, 1201 (5th Cir.), cert. denied, 451 U.S. 974, 101 S. Ct. 2055, 68 L. Ed. 2d 354 (1981).

[12]U.S. CONST. amend. V.

[13]North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 711, 23 L. Ed. 2d 656 (1969).

7

already been "punished" for the cocaine offense charged in the subject indictment.

At the outset, we note the importance of distinguishing double jeopardy's prohibition of multiple prosecutions from its protection against impermissible multiple punishments.  Although multiple prosecutions, i.e., more than one prosecution by the same sovereign for the same offense, always violate double jeopardy,[14] multiple punishments for the same offense may or may not violate double jeopardy.  That is because Congress (or a state legislature) determines the scope of the constitutional protection in the multiple punishments context.  If the legislature intended to impose multiple punishments for the same offense, imposition of such sentences does not violate the Constitution.[15]  The purpose of the Double Jeopardy Clause in the multiple punishments context is to ensure that the punishment assessed does not exceed that authorized by the legislature (either the length of the sentence or the number of times that the sentence is imposed).[16]

_____

[14]We emphasize that the indictment or the prosecution does not run afoul of the prohibition against multiple prosecutions. Witte is not subject to multiple prosecutions for the cocaine offenseSQhe was never placed in jeopardy for that offense.  Our concern is with the punishment that would result if Witte were to be prosecuted for the cocaine offense:  he is potentially subject to multiple punishments for the cocaine offense.

[15]Missouri v. Hunter, 459 U.S. 359, 367, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983) (quoting Whalen v. United States, 450 U.S. 333, 344, 101 S. Ct. 1137, 1145, 67 L. Ed. 2d 275 (1981)).

[16]Jones v. Thomas, 491 U.S. 376, 381, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989); Garrett v. United States, 471 U.S. 773, 778, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985); Missouri v. Hunter, 459 U.S. 359, 366-68, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); Pearce, 395 U.S. at 711; United States v. Martinez, 931

8

For purposes of double jeopardy, the drugs involved in the "same offense"SQconspiring and attempting to import cocaineSQwere included in relevant conduct to sentence Witte for the marijuana offense and are the subject of the dismissed indictment.[17] The pertinent issues are (1) whether inclusion of the cocaine in relevant conduct at sentencing for the marijuana offense punished Witte for the cocaine offense, and if so, (2) whether Congress has authorized single or multiple punishment for the cocaine offense. This double jeopardy issue is res nova in this circuit, but the Second and Tenth Circuits have considered it.[18] Both have concluded that a defendant's acts included as relevant conduct in calculating punishment for one offense may not later form the basis of another indictment without violating double jeopardy.[19]

---

F.2d 851, 853 (11th Cir.), cert. denied, ___ U.S. ___, 112 S. Ct. 268, 116 L. Ed. 2d 221 (1991).

[17]Thus both parties assume that the "same offense" element is satisfied under the test enunciated in Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). But clearly the statute under which Witte was convicted and the statutes under which he is now indicted proscribe different offenses, i.e., aiding and abetting possession of a controlled substance (21 U.S.C. § 841(a)(1); 18 U.S.C. § 2), and conspiring to import, and aiding and abetting in the attempt to import, a controlled substance (21 U.S.C. §§ 952(a), 963; 18 U.S.C. § 2). Cf. Hunter, 459 U.S. at 367; United States v. Cruce, 21 F.3d 70, 75-76 (5th Cir. 1994). We address the issues in this case, however, as they were presented by the parties.

[18]Since this appeal was argued and taken under submission, another panel of this court has addressed the same issue that is now before us and has concluded, as we do, that double jeopardy does not preclude the subsequent prosecution and conviction of conduct that was earlier included in relevant conduct. See Cruce, 21 F.2d 70.

[19]United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991), cert. denied, ___ U.S. ___, 112 S. Ct. 1695, 118 L. Ed. 2d 406

9

In United States v. Koonce,[20] the defendant was convicted of distributing 443 grams of methamphetamine that he had mailed to his cohort. The district court sentenced him, however, for 7,869 grams. That quantity included 443 grams proved at trial, 963 grams found in his home, and 6,463 grams that Koonce was purported to have sold on other occasions. Inclusion of the additional grams in "relevant conduct" increased Koonce's offense level under the Guidelines from 32 (range: 188 to 235 months) to 34 (range: 235-293 months). Unlike Witte, Koonce received the maximum statutory sentence for all of the drugs (240 months).[21]

The government then brought a second indictment charging Koonce with the 963 grams of methamphetamine found in his home. The Tenth Circuit employed a three-step analysis to determine whether double jeopardy was thereby violated: First, had Koonce been punished for the methamphetamine found at his residence? Second, if so, did Congress intend that an accused in Koonce's position receive cumulativeSQalthough not necessarily consecutiveSQ

---

and ___ U.S. ___, 112 S. Ct. 1705, 118 L. Ed. 2d 413 (1992); United States v. McCormick, 992 F.2d 437 (2d Cir. 1993).

[20]Id. Koonce was relied on by the district court in dismissing the indictment.

[21]This fact does not distinguish Koonce from the case before us for purposes of double jeopardy analysis. If, like Koonce, Witte had received the statutory maximum sentence for all of the drugs (365 months), it might appear wastefulSQthough not a violation of double jeopardySQto prosecute him for the cocaine offense. But as Witte's counsel admitted at oral argument, the government does recognize some benefit from a second conviction: it receives a $50 cost assessment to balance the budget, and more importantly, the second conviction serves as a predicate for enhanced punishment under recidivist statutes. That second conviction reflects Witte's actual recidivist status.

sentences from two separate proceedings if both sentences punish the accused for exactly the same conduct? Finally, if the first two inquiries are answered affirmatively, does the second punishment constitute "double" punishment even though the sentence derived therefrom is specified to run concurrently with the first sentence?

In answering the initial inquiry, the court concluded that Koonce had been punished for the drugs found at his residence because his base offense level would have been lower had they not been included via the relevant conduct provisions of the Guidelines. The "real offense" approach of the Guidelines required that Koonce be punished for the acts included in relevant conduct; therefore, concluded the Koonce court, he was punished.[22]

Second, the Koonce court found that the government had failed to point out "any authority holding that Congress intended to punish a defendant a second time for conduct that [had] previously been aggregated into the base offense level for a related sentence in an earlier prosecution."[23] The court relied on (1) §3D1.2's grouping requirement, which mandates that a defendant's base offense level be determined by aggregating drug quantities from multiple counts in a single proceeding, and (2) the Sentencing Commission's announced goal of preventing prosecutorial charge

---

[22]Id. (emphasis added).

[23]Id., 945 F.2d at 1151.

11

manipulation,[24] to determine that Congress intended only one punishment rather than multiple punishments. The purpose of grouping is to ensure that an accused receives the same sentence that he would have received had he been charged and convicted of one narcotics count based on the same totality of facts. Recognizing that Koonce had received the statutory maximum sentence possible for the total quantity of drugs, the Tenth Circuit concluded that Congress could not have intended a larger punishment if a defendant were prosecuted in two proceedings.

Third, the Koonce court concluded that even if the defendant's second sentence were specified to run totally concurrent with the first, a second sentence would violate double jeopardy. The court relied on Ball v. United States.[25] Ball, a previously convicted felon, was convicted in one proceeding for (1) the "receipt" of a firearm and (2) the "possession" of a firearm. He was sentenced to consecutive terms of imprisonment. On appeal, the Fourth Circuit remanded with instructions to modify the sentences to make them concurrent. The Supreme Court concluded that, as both offenses were established by the same criminal act, Congress had not intended to subject Ball to two convictions. Thus "one of the convictions, as well as its concurrent sentence, [was] unauthorized

---

[24]Id., 945 F.2d at 1151-52; United States Sentencing Commission, Guidelines Manual, Ch. 1, Pt. A.4(a), policy statement (1993).

[25]470 U.S. 856, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985).

punishment for a separate offense."[26]  In Koonce, the Tenth Circuit relied upon these statements to posit that a concurrent sentence can be "punishment."[27]  As the Tenth Circuit had already decided that Congress had authorized only one punishment for that criminal act, the court concluded that this second punishment violated double jeopardy.

In United States v. McCormick,[28] the Second Circuit adopted Koonce's analytical framework.  It affirmed the dismissal of bank fraud charges for acts that were used in a prior case as relevant conduct to compute the defendant's base offense level.  McCormick was charged with bank fraud in Connecticut that resulted in a $75,000 loss.  Subsequent to that indictment, McCormick was charged for bank fraud in Vermont that allegedly resulted in a $4 million loss.  He was then convicted on the Connecticut bank fraud charge.  At sentencing for the Connecticut conviction, the loss was calculated to be in the $2.5-5 million range, a sum that obviously included the Vermont loss.  McCormick's motion to dismiss the Vermont bank fraud charges on double jeopardy grounds was granted.

---

[26]Ball, 470 U.S. at 864.
"A separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences. . . ."  Id. at 865 (noting the potential for an increased sentence under a recidivist statute, possible delays in parole eligibility, and the societal stigma that results from the conviction itself).

[27]Koonce, 945 F.2d at 1153.  We do not disagree, but note that any sentence is punishment.  The issue on which we part ways with the Tenth Circuit is whether a second punishment is authorized by Congress, the second element of the Tenth Circuit's analysis.

[28]992 F.2d 437 (2d Cir. 1993).

13

The Second Circuit determined that inclusion of the Vermont amount in relevant conduct amounted to punishment for the Vermont fraud in the Connecticut proceedings, and that a second punishment for the Vermont loss would violate double jeopardy: The Sentencing Guidelines' grouping provision requires that defendants in fraud cases, like drug offenders, be assessed "a single punishment for a set of similar acts."[29] "The Guidelines achieve consistency in sentencing for fraud cases by grouping all of the relevant conduct and applying a single offense level to the whole course of conduct."[30] The Second Circuit concluded that Congress apparently did not intend to allow a defendant to be <u>prosecuted</u> for conduct already used to increase his or her offense level. Being skeptical of the way that the Tenth and Second Circuits reached those results, we now examine the double jeopardy question independently.

      1.    Inclusion of Cocaine in Relevant Conduct: Punishment?

First, the government contends that inclusion of the cocaine in relevant conduct to <u>calculate</u> the defendant's base offense level is legally no different than <u>enhancing</u> his sentence by increasing a base offense level to a higher level under the Guidelines because of prior criminal activity. As increasing a base offense level by use of prior crimes is not "punishment" for prior crimes, argues the government, neither is using prior crimes to calculate a base

_____

[29]992 F.2d at 440; <u>see</u> U.S.S.G. §2F1.1, comment. (n. 6) ("The cumulative loss produced by a common scheme or course of conduct should be used in determining the offense level, regardless of the number of counts of conviction.").

[30]992 F.2d at 440.

14

offense level punishment for those prior crimes.  Thus, concludes the government, Witte has not been "punished" for the cocaine offense.  Witte counters that although enhancement of a sentence may not be punishment, counting the cocaine to determine his base offense level, with a corresponding 287-month increase in the maximum possible length of his sentence, is punishment.

It is well-settled that using prior crimes to "enhance" a sentence does not impinge on double jeopardy, because defendants are not "punished" for crimes so considered.[31]  Pre-Guidelines, uncharged criminal conduct could be "considered" at sentencing as aggravating circumstances and could still form the basis of a later indictment, conviction, and sentence without violating double jeopardy.[32]  The "real offense" approach to relevant conduct, however, may well lead to the conclusion that Witte was "punished" for the cocaine offense.

Stepping back from the somewhat artificial distinction between enhancement and calculation of a base offense level, we examine whether, pre-Guidelines, the prosecution and punishment of Witte for the cocaine offense would have been foreclosed because Witte's

---

[31]If a defendant is convicted of murder and given a life sentence, and is later convicted for having kidnapped the murder victim, the sentencing court may consider the fact that the kidnaping victim was murdered when assessing a death penalty rather than a life sentence without violating double jeopardy. Williams v. Oklahoma, 358 U.S. 576, 585-86, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959).

[32]Sekou v. Blackburn, 796 F.2d 108, 111-12 (5th Cir. 1986) ("[C]onsideration of other crimes at sentencing does not implicate the Double Jeopardy Clause because the defendant is not actually being punished for the crimes so considered."  796 F.2d at 112.).

15

cocaine activities were considered in imposing sentence for the marijuana offense.  <u>Williams v. Oklahoma</u>[33] indicates that the answer is no.  As the Supreme Court noted in <u>Williams</u>, the sentencing court "is authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime."[34]

> And in view of the obvious fact that, under the law of Oklahoma, kidnaping is a separate crime, entirely distinct from the crime of murder, the court's consideration of the murder as a circumstance involved in the kidnaping crime cannot be said to have resulted in punishing petitioner a second time for the same offense, nor to have denied to him due process of law in violation of the Fourteenth Amendment.[35]

In Witte's case, the sentencing court is required by the Guideline's relevant conduct rules to consider the circumstances surrounding the particular offense of conviction.  We find it clear that, like the crimes of kidnap and murder of the kidnap victim in <u>Williams</u>, the marijuana charge to which Witte pleaded guilty and was sentenced is an offense separate and distinct from the cocaine offense.[36]  If, in <u>Williams</u>, consideration of the conduct constituting the separate offense of murder to increase the severity of the sentence for kidnaping was not punishment for the conduct so considered, then the use of relevant conduct to increase the punishment of a charged offense does not punish the offender

---

[33]358 U.S. 576.

[34]358 U.S. at 585.

[35]358 U.S. at 586.

[36]<u>See</u> <u>supra</u> note 17.

16

for the relevant conduct.  Of course, there is double use of single acts, but Williams apparently permits this.  Williams was given a life sentence for murder and then the same murder was used to step up his punishment for kidnaping to death.

The only ostensible missing link in this analysis lies in the answer to the question whether, when Williams was sentenced to life imprisonment for murder, the sentencing court considered the kidnaping of the murder victim.  Although not clear from the text of Williams, we may fairly assume that the uncharged kidnaping was considered when Williams was sentenced for murder.  After all, the sentencing court "[was] authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime."[37]  If so, then Williams is this case))pre-Guidelines.

The fact that Witte's double jeopardy challenge arises post-Guidelines does not change the analysis of the punishment issue presented in Williams.  Before adoption of the Guidelines, judges exercised their sound discretion in determining the appropriate level of punishment within established statutory ranges of imprisonment.  Post-Guidelines, judges are still required to determine a sentence within an established statutory range.  The Guidelines simply provide a formulae for what used to be left to trial court discretion.  To improve consistency in sentencing, the Guidelines attempt to accommodate multiple uses of conduct.  Specifically, the Guidelines require that when, in cases such as Witte's, the sentencing court has considered the marijuana

_____

[37]Williams, 358 U.S. at 585.

17

conviction in determining the offense level for the cocaine offense, the court must impose concurrent sentences.[38]

Even if we assume arguendo that <u>Williams</u> does not absolutely dispose of this threshold punishment question, we would not end our analysis at this juncture. Rather, we accept for purposes of our analysis that Witte has been punished by inclusion of the cocaine activities in relevant conduct and proceed to consider whether a second punishment is nonetheless permitted by Congress.

## 2. Guidelines Authorize Multiple Punishment

We therefore turn to the Guidelines to determine the appropriate punishmentSQsingle or multipleSQto be assessed.[39] The Tenth Circuit's observation that grouping rules under the Guidelines prevents double counting and thus count manipulation is accurate. If Witte had been convicted in one proceeding of both the cocaine and marijuana offenses, grouping of countsSQaggregation of the drug quantitiesSQwould result in a Guideline range of 292-365 months. The high end of the range serves as a cap to the <u>length</u> of the sentence (punishment) that Witte can receive for both offenses.[40] But the question here is whether Congress intended

---

[38]U.S.S.G. §5G1.3(b). This subsection will be discussed in further detail in Part B, Section 2 of this opinion.

[39]<u>United States v. McCormick</u>, 992 F.2d 437, 442 n.1 (2d Cir. 1993) (Mahoney, J., dissenting) (noting that the majority properly recognized that "in the sentencing area, Congressional intent is reflected in the Sentencing Guidelines.").

[40]The same is true if Witte is convicted in two separate proceedings for these offenses. His punishment cannot exceed 365 months in length. As we will demonstrate, this is accomplished by imposing concurrent sentences.

18

Witte to be subject to multiple punishments (a second punishment) for the cocaineSQthat had already been included in relevant conduct for a related sentenceSQas long as the aggregate length of his sentences did not exceed the lesser of the cap provided by the range or the statutory maximum sentence.

The Tenth Circuit found no authority in the Guidelines that Congress intended to punish a defendant a second time for conduct that has previously been aggregated into the base offense level for a related sentence in an earlier prosecution.[41]  But that court did not have the benefit of the present §5G1.3(b) of the Guidelines, which Witte concedes in his motion to dismiss would require imposition of concurrent sentences if he were tried and convicted of the cocaine offense.  Section 5G1.3 provides in pertinent part:

> Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment
>
> (b)  If . . . the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.[42]

The commentary to §5G1.3(b), application note 2, reflects that

> Subsection (b) . . . addresses cases in which the conduct resulting in the undischarged term of imprisonment has been fully taken into account under §1B1.3 (Relevant Conduct) in determining the offense level for the instant offense.  This can occur, for example where a defendant is prosecuted in both federal and state court, or in two

---

[41]Id., 945 F.2d at 1151.

[42]U.S.S.G. §5G1.3.

19

or more federal jurisdictions,[43] for the same criminal conduct or for different criminal transactions that were part of the same course of conduct.[44]

The commentary clearly permits a defendant to be prosecutedSQand sentencedSQin more than one federal proceeding for different criminal offenses that were part of the <u>same course of conduct</u>.[45] More importantly, a defendant's base offense level for each offense

---

[43]Two separate indictments were brought against Witte in the same federal jurisdiction, the Southern District of Texas (Houston division). Although subsection (b) discusses "two or more federal jurisdictions," Witte does not argue that §5G1.3(b) does not apply on this basis. A common sense approach to that language is that subsection (b) also addresses prosecutions in "the same federal jurisdiction twice," i.e., the Southern District of Texas and the Southern District of Texas. Subsection (b) probably assumes that multiple counts resulting from the same course of conduct would be brought together if they occur in the same federal jurisdiction. Just as there are valid reasons for bringing two separate indictments against a defendant in two federal jurisdictions, there are valid reasons for bringing two separate indictments against a defendant in the same jurisdiction. In this case, the government did not believe that the offenses were part of the same course of conduct and had not completed its investigation of the cocaine offense.

[44]U.S.S.G. §5G1.3, comment. (n.2).

[45]<u>United States v. Cruce</u>, 21 F.3d 70 (5th Cir. 1994). In <u>Cruce</u>, this circuit indicated its disagreement with the Tenth and Second Circuits' views in <u>Koonce</u> and <u>McCormick</u>. Therefore, in this opinion, this panel is not free to adopt the approach of those cases. In <u>Cruce</u>, as in this case, it is to be noted that the defendants faced punishment for conduct that had not been charged, but that had been included in relevant conduct when they were sentenced in an earlier prosecution. <u>Cruce</u> expressly states that consideration of relevant conduct does not punish defendants <u>for relevant conduct</u> so considered but <u>for the offense of conviction</u>. <u>Id.</u> at 75 n.8. Despite the temporal differences noted by the majority in <u>McCormick</u> between those circumstances and the circumstances set forth in §5G1.3(b), the court in <u>Cruce</u> concluded that §5G1.3(b) applied to the defendants because "it is clear that Congress and the Sentencing Commission anticipated the imposition of punishment))whether concurrent or consecutive))in a second proceeding and, thus, did not intend to preclude such proceeding." <u>Id.</u> at 77 n.11. Accordingly, <u>Cruce</u> held that the second punishment did not violate double jeopardy.

20

of conviction))unless the Guidelines expressly provide otherwise))<u>must</u> be determined on the basis of <u>all relevant conduct</u>.[46] The principle that all relevant conduct be considered in determining a defendant's base offense level is neither optional nor hortatory; it is mandatory.

Read in pari materia, §5G1.3(b) clearly provides that the government may convict a defendant of one offense and punish him for all relevant conduct; then indict and convict him for a different offense that was part of the same course of conduct as the first offense))and sentence him <u>again</u> for all relevant conduct. To repeat, this proposition merely reflects Congress's specific intent that <u>all</u> relevant conduct be considered in determining a defendant's sentence. Consequently, we find no basis for distinguishing the situation described by §5G1.3(b) from the one before us today.

Like it or not, we are satisfied that §5G1.3 reflects Congress's intent to prevent punishment from being larger if the government chooses to proceed with two different proceedingsSQand that Congress accomplishes this intent))not by foreclosing a second prosecution but by directing that the length of the resulting term of imprisonment be no greater than that which would have resulted from prosecution and conviction on both counts in a single proceeding. Section 5G1.3(b), therefore, accomplishes in successive proceedings what grouping of counts pursuant to §3D1.2 accomplishes in a single proceeding. Thus §5G1.3(b) is "authority

---

[46]U.S.S.G. §1B1.3(a).

21

. . . that Congress intended to punish a defendant a second time for conduct that has previously been aggregated into the base offense level for a related sentence in an earlier prosecution," authority that the Tenth Circuit))without the benefit of §5G1.3(b) in its present form))found lacking when it analyzed Koonce's double jeopardy challenge.[47]

The Second Circuit had the benefit of §5G1.3(b) but distinguished the situation in McCormick from that described in §5G1.3(b). That distinction concerns when the defendant will be punished for both offenses in a single sentencing proceeding, i.e., whether the defendant will be punished for both offenses at sentencing for the first offense (McCormick's situation) or at sentencing for the second offense (the Second Circuit's view of §5G1.3(b)). But in our view, under §5G1.3(b) and relevant conduct principles, the defendant is punished for both offenses both at sentencing for the first offense and at sentencing for the second offense.

With all due respect, we believe that the Second Circuit's analysis of §5G1.3(b) suffers from two errors: first, it ignores))under §5G1.3(b)))the application of relevant conduct principles to sentencing for the first offense; second, it does not consider McCormick's situation at the relevant stage addressed by §5G1.3(b), i.e., at the sentencing stage for purposes of the

---

[47]Koonce, 945 F.2d at 1151.

22

instant offense.[48]  The <u>McCormick</u> court did not consider that, <u>at</u> <u>sentencing</u> for the second offense, McCormick could be punished <u>again</u> for all relevant conduct.  Section 5G1.3(b) assumes that a defendant has been prosecuted and convicted for the instant offense))an offense that was part of the <u>same course of conduct</u> as an offense for which there is already a conviction and for which an appropriate <u>Guidelines</u> sentence has been assessed (hence the application of relevant conduct at the first sentencing proceeding)))and that it has proceeded to the sentencing stage.

Nevertheless, the Second Circuit recognized that in a case governed by subsection (b), the Sentencing Commission would require concurrent sentencing to avoid multiple punishments.[49]  Thus, two sentences, though concurrent, have been authorized by the legislature in this situation, and thus would not violate double jeopardy.  The significance of this analysis should be obvious:  it is not the subsequent <u>prosecution</u> that is affected, but the subsequent <u>sentence</u> that may be pronounced and the manner in which such sentence may be imposed, assuming that the permitted subsequent prosecution produces a conviction.

---

[48]992 F.2d at 441 n.3.  Again, it is the punishment or the sentence imposed for the cocaine offense, not the prosecution for that offense, that implicates double jeopardy concerns.  If multiple punishments are impermissible, we foreclose a prosecution for the cocaine offense not because the prosecution would violate double jeopardy, but because it would be a waste of judicial resources to proceed to the sentencing stage only to have imposition of a sentence barred by double jeopardy.

[49]992 F.2d at 441 n.3.

C.    Sentencing for the Cocaine Offense

Witte argues that the drafters of §5G1.3(b) could not have foreseen the circumstances of this case:  a 5K1.1 motion in the first prosecution that will not pass to the second prosecution. Witte insists that it is unfair to allow the governmentSQwhich received substantial assistance from a defendant in its initial prosecution of that defendantSQto seek imposition of a longer, though concurrent, second sentence.  In effect, Witte is asking this court to adopt a per se rule that the second sentence imposed cannot exceed the first if the first resulted from a §5K1.1 motion, i.e., to "pass" the effect of a 5K1.1 motion from one sentencing proceeding for one offense of conviction to a subsequent sentencing proceeding for another offense of conviction.   But Witte's otherwise appealing argument ignores an important aspect of the substantial assistance that he gave:   It related only to the marijuana offense, not the cocaine offense. Significantly, Witte's argument also ignores application note 2 to §5G1.3(b) and the background to this section, which makes clear that §5G1.3(b) is intended to result in the appropriate incremental punishment that most nearly approximates the sentence that would have been imposed had both sentences been imposed at the same time.[50]   This is accomplished both by (1) imposition of a concurrent sentence, and (2) giving credit for time served.

If Witte is ultimately convicted of the cocaine offense, the base offense level will necessarily be the same as that for the

_____

[50]U.S.S.G. §5G1.3, comment. (n.2, backg'd.).

24

marijuana offense because relevant conduct is the same for both the marijuana and cocaine offenses. Even so, there may be still be adjustments to the base offense level. For example, that level could be increased for an aggravating role or decreased for acceptance of responsibility.[51] For illustrative purposes, we assume that the offense level will again be 40, and that the Guideline range will be 292-365 months.[52] The sentencing court will then have to determine the appropriate <u>total</u> punishment for <u>both</u> offenses. For purposes of this illustration, we choose 292 months as the appropriate total punishment. Witte must then receive credit for time served. If, for example, Witte shall have served 30 months for the marijuana offense by the time of the second sentencing, the sentencing court must credit Witte with 30 months served, and impose a sentence of 262 months (292 minus 30) to run concurrently with the remainder of Witte's sentence for the marijuana offense. As the commentary to §5G1.3(b) emphasizes, the 262-month sentence is not a departure from the Guidelines, but reflects a credit for Guidelines purposes for time that Witte has served. Under 5G1.3(b), then, Congress allows "double punishment" for the cocaine offense but ameliorates its harsh impact and prevents punishment from exceeding the statutory maximum by causing sentences for both the marijuana and cocaine offenses to run concurrently and by giving credit for time served.

---

[51]<u>See</u> U.S.S.G. §5G1.3(b), comment. (n.2).

[52]The sentencing court could even depart from the applicable Guideline range in response to a §5K1.1 motion.

25

We turn now to the alternative basis urged by Witte for dismissal of the indictment.

## 2.  Breach of Plea Agreement

Witte claims that the government breached the plea agreement by "re-indicting" the "same conspiracy."  Again, as part of the plea agreement for the marijuana offense, the government dismissed the first count against Witte, conspiring to possess with intent to distribute more than 100 kilograms of marijuana from January 25, 1991 to February 8, 1991.

### A.  Standard of Review

Whether the government has violated the terms of the plea agreement is a question of law, which on appeal is reviewed de novo.[53]

### B.  No Breach

In determining whether the government has breached a plea agreement, the court must determine "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement."[54]  The defendant must prove the underlying facts that establish a breach by a preponderance of the evidence.[55]

During the sentencing hearing, Witte expressed a belief that he would be immune from prosecution in other cases.  But Witte's

---

[53]United States v. Valencia, 985 F.2d 758, 760 (5th Cir. 1993).

[54]Valencia, 985 F.2d at 761 (citing United States v. Huddleston, 929 F.2d 1030, 1032 (5th Cir. 1991)).

[55]United States v. Hernandez, 996 F.2d 62, 64 (5th Cir. 1993).

counsel immediately contradicted Witte's statement. Additionally, his counsel asked the court not to include the cocaine because it would deprive Witte of the opportunity to plead not guilty and go to trial on that offense, notSQas Witte contendsSQso that he could argue "breach of the plea agreement." Witte was expressly informed by the court that the government wanted to indict him later on the cocaine offense, and Witte expressed his understanding of this advice. Finally, Witte's substantial assistance did not relate to the cocaine offense, but only to the marijuana offense. Thus even if Witte somehow subjectively clung to the belief that he could not be prosecuted for the cocaine offense, that is not a reasonable understanding of the plea agreement. The government has not breached that agreement.

Witte nevertheless contends that the government's present indictment charges him with the count that was dismissed pursuant to the plea agreement. We disagree. This indictment charges Witte with conspiring and attempting to import 1,091 kilograms of cocaine between August 1989 and August 1990. The government dismissed a count of conspiracy to possess with intent to distribute in excess of 100 kilos of marijuana from January 25, 1991 through February 8, 1991. Witte argues, though, that the same conspiracy underlies both counts, and that the government is bound under either of two doctrinesSQ(1) the law of the case, or (2) collateral estoppelSQby a "same conspiracy" finding by the sentencing court. Witte premises his argument on the novel idea that the sentencing court's "same course of conduct" finding constitutes a "same conspiracy"

27

finding.  This argument is unavailing.

A same conspiracy finding may be necessary to include the acts and omissions of others as relevant conduct, but it is not necessary to include Witte's own acts in relevant conduct.[56]  The PSR Addendum refers to Witte's "agreement" (i.e., conspiracy), but the district court never specifically stated that he adopted the PSR or that specific finding.  The only express finding by the sentencing court on this issue is that the relevant conduct spelled out in the PSR was "relevant conduct related to the charge to which he pleaded guilty."  Neither did the sentencing court find that the cocaine and marijuana offenses were part of the "same conspiracy" count that was dismissed.

Even if on dismissing the indictment the district court had found that the marijuana and cocaine offenses were part of the same conspiracy, we would review such a finding for clear error only. Under the facts of this case, it is obvious that two distinct conspiracies were involved:  they were separated by time; they involved different co-conspirators; they involved different statutory offenses; they included different overt acts in each offense charged; and they occurred in different geographical locations.[57]  Witte clearly has not been indicted for the same

---

[56]U.S.S.G. §1B1.3(a)(1)(A), (a)(1)(B), (a)(2).

[57]United States v. Marable, 578 F.2d 151, 154 (5th Cir. 1978).  In his brief, Witte demonstrates that the Guatemala cocaine and Mexico marijuana deals were part of the same conspiracy.  Witte's comparison is inapposite:  the relevant inquiry is whether both foreign deals (the cocaine offenses) were part of the same conspiracy as the deal that occurred in the United States (the marijuana offenses).

conspiracy count that was dismissed pursuant to the plea agreement.

III

CONCLUSION

For the foregoing reasons, we conclude that the district court improperly dismissed the indictment on double jeopardy grounds. Neither may the court's dismissal of the indictment be sustained on grounds that the government breached the plea agreement.  The dismissal of the indictment is therefore REVERSED and the case REMANDED for proceedings consistent with this opinion.